(186 P.3d 812)
No. 97,849

STATE OF KANSAS, *Appellee*, v. WAYNE WATSON, *Appellant*.

Opinion filed June 20, 2008.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, and *Staci N. Lane,* legal intern, for appellant.

*Thomas R. Stanton,* deputy district attorney, *Karen S. Smart,* assistant district attorney, *Keith E. Schroeder,* district attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before LEBEN, P.J., MALONE and GREENE, JJ.

MALONE, J.: Wayne Watson appeals his conviction of theft of property valued between $1,000 and $25,000. Watson claims: (1) The district court violated his right to a speedy trial under the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 *et seq.*; (2) the district court's jury instructions on theft were clearly erroneous; (3) the district court erred in admit-

ting evidence at trial; and (4) Watson was denied a fair trial because of cumulative errors.

On October 28, 2005, Arick Galloway, a foreman for Stainless Steel Systems (Stainless Steel), located in Hutchinson, drove through Stainless Steel's yard and noticed that some items were missing. The missing items included used equipment which a Stainless Steel customer wanted rebuilt. Galloway called Greg Roepka, the owner of Stainless Steel, and told him about the missing equipment.

Roepka called the police. He also called Matt Mayo at Midwest Iron and Metal (Midwest), a local salvage yard, and asked Mayo to call him if anyone attempted to sell the missing equipment. Shortly thereafter, Watson arrived at Midwest in a truck carrying equipment that matched Roepka's description of the stolen property. Because Watson wanted to sell the equipment as scrap, Mayo weighed Watson's truck and its contents and then called Roepka and the police.

Hutchinson police officers arrived at Midwest and observed a large steel item in the bed of Watson's truck. The officers photographed the tire treads of Watson's truck. Police officers went to Stainless Steel's yard and discovered tire tracks near the location where the missing equipment had been stored. The officers also photographed these tire tracks.

Roepka had previously taken photographs of the used equipment in May 2005. Comparing his May 2005 photographs with the equipment recovered from Watson's truck, Roepka determined that it was the equipment stolen from Stainless Steel's yard. Additionally, the equipment in Watson's truck matched the "footprint" the missing equipment had left in the ground at Stainless Steel's yard. Galloway also identified the equipment in Watson's truck as the missing equipment.

On November 4, 2005, the State charged Watson with one count of theft of property valued between $1,000 and $25,000 in violation of K.S.A. 21-3701(a)(1). At the time the complaint was filed, Watson was in the custody of the Kansas Department of Corrections on a parole violation.

On February 3, 2006, Watson filed a document under the UM-DDA requesting that he be brought to trial on the theft charge. Watson was transported to Reno County and received appointed counsel. On March 30, 2006, Watson requested a continuance of the jury trial which was set for April 11, 2006. The district court granted the request and continued the jury trial to May 23, 2006. On May 22, 2006, Watson again requested a continuance of the jury trial. The district court granted the request and continued the jury trial to August 29, 2006. On that date, the district court continued the jury trial to October 3, 2006. There is no indication in the record who requested the final continuance or whether any hearing was held before the district court granted the continuance.

On August 7, 2006, Watson filed a pro se motion for dismissal. In the motion, he argued that the criminal case against him should be dismissed because 180 days had passed since he filed his UM-DDA application. There is no indication in the record that the district court ever ruled on this motion.

A jury trial commenced on October 3, 2006, and the jury found Watson guilty as charged. On December 1, 2006, the district court sentenced Watson to a presumptive imprisonment term of 14 months. Watson timely appeals.

### Speedy trial under the UMDDA

Watson claims his speedy trial rights were violated because his case was not brought to trial within 180 days of his UMDDA application. Watson acknowledges that he requested two separate jury trial continuances which extended the commencement of the trial beyond 180 days after his UMDDA application was filed. However, Watson argues that the delays caused by his continuance requests should not be attributable to him because he did not specifically waive his rights to a speedy trial under the UMDDA when he requested the continuances.

This court has unlimited review of both statutory and constitutional rights to a speedy trial since both rights concern questions of law. *State v. Mann*, 274 Kan. 670, 697-98, 56 P.3d 212 (2002). Moreover, the interpretation of a statute is a question of law over which an appellate court has unlimited review. An appellate court

is not bound by the district court's interpretation of a statute. *State v. Bryan,* 281 Kan. 157, 159, 130 P.3d 85 (2006).

The UMDDA allows persons imprisoned in Kansas to request final disposition of other Kansas charges pending against them. K.S.A. 22-4301 *et seq.; In re Habeas Corpus Application of Sweat,* 235 Kan. 570, 573-74, 684 P.2d 347 (1984). According to the UMDDA, once a prisoner's detainer request is received, the complaint must be brought to trial within 180 days or no Kansas court has jurisdiction over that complaint and the untried complaint must be dismissed with prejudice. K.S.A. 22-4303.

However, the UMDDA provides for extensions of the 180-day deadline for commencing a trial under the Act. K.S.A. 22-4303 states, in relevant part:

"Within one hundred eighty (180) days after the receipt of the request and certificate by the court and county attorney *or within such additional time as the court for good cause shown in open court may grant, the prisoner or his counsel being present,* the indictment, information or complaint shall be brought to trial; *but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for him to be heard."* (Emphasis added.)

As a general rule, criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt as to the meaning of the statute is decided in favor of the accused. Nevertheless, the rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Snow,* 282 Kan. 323, 340-41, 144 P.3d 729 (2006).

The parties do not dispute that Watson properly invoked his speedy trial rights under the UMDDA. Although the record does not reflect when the State actually received Watson's UMDDA application, the State accepts February 3, 2006, as the date the speedy trial clock began to run. Watson's trial was originally set for April 11, 2006, which fell within the 180-day statutory time period. Watson's trial, however, was not commenced until October 3, 2006, more than 180 days after Watson invoked the UMDDA. The issue is whether Watson's trial deadline was properly extended as provided in K.S.A. 22-4303.

Watson acknowledges that he requested two separate jury trial continuances which extended the commencement of the trial beyond 180 days after his UMDDA application was filed. However, Watson argues that the delays caused by his continuance requests should not be attributable to him because he did not specifically waive his rights to a speedy trial under the UMDDA when he requested the continuances. Watson cites *State v. Brooks*, 206 Kan. 418, 479 P.2d 893 (1971), to support this argument. *Brooks*, however, is not on point. In *Brooks*, the Kansas Supreme Court held that a defendant's failure to demand relief under the UMDDA amounts to a waiver of the defendant's speedy trial rights under the Act. 206 Kan. at 421. The court addressed whether the defendant had properly invoked his speedy trial rights under the UMDDA, but the court did not address whether the trial deadline was properly extended as provided in K.S.A. 22-4303. 206 Kan. at 421-22.

Contrary to Watson's argument, K.S.A. 22-4303 does not establish a firm deadline for bringing a defendant to trial under the UMDDA. Although the statute establishes an initial deadline of 180 days, K.S.A. 22-4303 further allows for "such additional time as the court for good cause shown" may grant provided the defendant or his or her attorney are present in open court. Furthermore, "a continuance may be granted on notice to the attorney of record" and an opportunity for the attorney to be heard. K.S.A. 22-4303.

Under K.S.A. 22-3402, the general speedy trial statute, a defendant may waive the statutory right to a speedy trial by requesting or acquiescing in the grant of a continuance. However, continuances charged to the State are counted toward the speedy trial deadline.

Under K.S.A. 22-4303, it does not matter whether a trial continuance has been requested by the defendant or by the State. Under the plain language of the statute, any trial continuance granted by the court extends the 180-day deadline for commencing a trial under the UMDDA provided that the defendant's attorney received notice of the continuance request and an opportunity to be heard.

Here, the speedy trial clock under the UMDDA began to run on February 3, 2006. The 55 days that passed between February 3, 2006, and March 30, 2006, are counted toward the speedy trial deadline. However, Watson requested trial continuances on March 30, 2006, and May 22, 2006, which continued the trial setting to August 29, 2006. The record reflects that these continuance requests were addressed in open court with counsel present. The journal entries filed with the district court indicate that the court granted each continuance request after "hearing the arguments of counsel." Pursuant to K.S.A. 22-4303, these trial continuances were properly granted and the delays are not counted toward the speedy trial deadline. However, there is no evidence in the record that Watson or his attorney received notice and had an opportunity to be heard on the trial continuance from August 29, 2006, to October 3, 2006. Thus, these 35 days are also counted toward the speedy trial deadline under the UMDDA.

Under these calculations, Watson was brought to trial within 90 days of his UMDDA application, which is within the UMDDA's limitation of 180 days. Therefore, Watson's statutory right to a speedy trial under the UMDDA was not violated.

### Jury instructions on theft

Next, Watson claims the district court clearly erred in instructing the jury on theft. Watson argues that Jury Instruction Nos. 7, 9, and 10 were misleading because they implied that he could be found guilty of theft under K.S.A. 21-3701(a)(1) if he merely possessed the stolen property. Possession of property knowing it to have been stolen by another is a violation of K.S.A. 21-3701(a)(4). Watson did not object to these instructions at trial.

An appellate court reviewing a district court's failure to give a particular jury instruction applies a clearly erroneous standard where a party neither suggested an instruction nor objected to its omission. See K.S.A. 22-3414(3); *State v. Cooperwood*, 282 Kan. 572, 581, 147 P.3d 125 (2006). " 'Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the

trial error had not occurred. [Citations omitted.]' " *State v. Trotter*, 280 Kan. 800, 805, 127 P.3d 972 (2006).

Jury Instruction No. 7 given by the district court mirrored the theft instruction provided in PIK Crim. 3d 59.01. The instruction stated:

"The defendant is charged with the crime of theft of property of the value of at least $1,000.00 but less than $25,000.00. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That Greg Roepka is the owner of the property;

"2. That the defendant obtained unauthorized control over the property;

"3. That the defendant intended to deprive Greg Roepka permanently of the use or benefit of the property;

"4. That the value of the property was at least $1,000.00 but less than $25,000.00; and

"5. That this act occurred on or about the 28th day of October, 2005 in Reno County, Kansas."

Jury Instruction No. 9 was substantially the same as Jury Instruction No. 7 and merely explained that the jury could convict Watson of the lesser included offense of theft of property valued less than $1,000. Jury Instruction No. 10 stated: "Obtains or exerts control over property includes, but is not limited to the taking, carrying away, or the sale, conveyance, or transfer of title to, interest in, or *possession of property*." (Emphasis added.) This instruction is the exact definition of "obtains or exerts control" stated in K.S.A. 21-3110(12). Moreover, PIK Crim. 3d 53.00 directs district courts to this statute for the definition of obtains or exerts control.

Focusing on the words "possession of property" from Jury Instruction No. 10, Watson argues Jury Instruction Nos. 7, 9, and 10 were misleading because together they implied that the jury could convict Watson of theft under K.S.A. 21-3701(a)(1) if he merely possessed the stolen property. Watson argues that because he was charged with theft in violation of K.S.A. 21-3701(a)(1), the State was required to prove that Watson was actually the person who took the property from Stainless Steel. It was not enough for the jury to decide that Watson was in possession of stolen property at the time he was arrested. According to Watson, the jury instructions given in his case "do not make this subtle but critical distinction clear."

Watson does not clearly explain how the district court's instructions could have misled the jury. At one point he argues: "The 'taking' of property from the owner is an element of the crime of theft" and that he was entitled to have the jury make a decision that he was guilty of that element. This is incorrect. The "taking" of property from the owner is not an element of the crime of theft under K.S.A. 21-3701(a)(1). See PIK Crim. 3d 59.01. All that is required is the unauthorized control, coupled with the intent to permanently deprive the owner of the use or benefit of the property. *State v. Kunellis,* 276 Kan. 461, 469, 78 P.3d 776 (2003).

Contrary to Watson's argument, Jury Instruction No. 10 did not imply that a jury could convict him of theft under K.S.A. 21-3701(a)(1) if he merely possessed the stolen property. The jury instruction stated that Watson could obtain or exert control over property by (1) taking it; (2) carrying it away; (3) selling, conveying, or transferring title to it; (4) selling, conveying, or transferring interest in it; or (5) selling, conveying, or transferring possession of it.

The jury instructions given by the district court mirrored the statutory definitions of theft found at K.S.A. 21-3701(a)(1) and of obtains or exerts control at K.S.A. 21-3110(12). The district court also followed the recommended PIK instructions on theft. Moreover, the district court's definition of obtains or exerts control did not raise the confusion Watson claims it raised. We conclude the district court's jury instructions on theft were not clearly erroneous.

### Admission of evidence

Next, Watson claims there were several instances where the district court erred in admitting evidence at his trial. When reviewing a district court's decision to admit evidence, an appellate court first determines whether the evidence is relevant. Once relevance is established, an appellate court must apply the evidentiary rules governing the admission and exclusion of evidence as a matter of law or in the exercise of the district court's discretion, depending on the contours of the evidentiary rule in question. *State v. Gunby,* 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

Watson first argues the district court erred in allowing Officer Michael Kaufman to give opinion testimony regarding whether tire tracks left at Stainless Steel matched the tire treads on Watson's truck. Kaufman testified that the police photographed the tire treads of Watson's truck and the police also photographed tire tracks at Stainless Steel's yard near the location where the missing equipment had been stored. According to Kaufman, the tire markings in the two sets of photographs were a match.

However, Watson failed to properly preserve this issue for appeal by making a contemporaneous objection to the evidence at trial. Kaufman testified two times that the tire tracks from Stainless Steel's yard matched the tire treads of Watson's truck. Watson, however, failed to object at either of these points during Kaufman's testimony. Watson only objected when Kaufman was explaining what the pictures in the various photographs depicted. To preserve an evidentiary issue for appeal, a party must make a timely and specific objection to the admission of the evidence. K.S.A. 60-404; *State v. Anthony*, 282 Kan. 201, 206, 145 P.3d 1 (2006).

Moreover, Watson only objected to Kaufman's testimony at trial on the ground that Kaufman was not qualified as an expert witness on tire tracks. The only issue Watson has raised on appeal is that Kaufman's testimony constituted inadmissible opinion testimony. Generally, a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. Engelhardt*, 280 Kan. 113, 127, 119 P.3d 1148 (2005).

Next, Watson argues that the district court erred in admitting evidence that Stainless Steel was the victim of other thefts. At trial, Roepka testified that several items had been stolen from Stainless Steel's yard on prior occasions. Once again, however, Watson failed to object at trial to most of this evidence. As previously mentioned, to preserve an issue for appeal, a party must make a timely and specific objection to the admission of the evidence at trial. K.S.A. 60-404; *Anthony*, 282 Kan. at 206.

The only question that Watson did object to concerning prior thefts was whether Roepka recognized other items in Midwest's scrap pile that belonged to Stainless Steel. However, the district court sustained Watson's objection to this question and, in fact,

Roepka did not answer the question. Thus, contrary to Watson's claim on appeal, the evidence was not admitted at trial.

Next, Watson claims the district court erred in admitting evidence regarding the future value of the stolen property. Roepka testified the stolen equipment was worth approximately $5,000 on the date it was stolen. Roepka also testified that the equipment would be worth between $10,000 and $15,000 by the time he was finished rebuilding it. He further testified that it would cost $100,000 to rebuild the entire "group of equipment" that included the stolen item. Roepka continued to testify, over Watson's objection, that the value of the equipment at the time of trial was far more than it was a year earlier when the theft was committed.

The State argues the testimony was relevant "as it aided the jury in understanding Mr. Roepka's business and how his business operated as well as the importance and value of the piece of stolen equipment." Contrary to the State's claims, however, evidence of the estimated future value of the stolen equipment was clearly irrelevant to show the value of the equipment Watson was accused of stealing. Thus, the district court erred in admitting this testimony.

Nevertheless, it is clear that the error was harmless. Roepka testified the equipment was worth approximately $5,000 on the date it was stolen. Watson did not dispute this testimony, and it was the lowest value of the stolen equipment offered at trial. The jury convicted Watson of stealing property valued between $1,000 and $25,000. Thus, Roepka's testimony about the future value of the equipment, including his testimony that it would cost $100,000 to rebuild the entire group of equipment that included the stolen item, did not affect the outcome of the trial.

### Cumulative errors

Finally, Watson claims he was denied a fair trial because of cumulative errors.

" 'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if

the evidence is overwhelming against the defendant. [Citation omitted.]' " *State v. Davis*, 283 Kan. 569, 583, 158 P.3d 317 (2007) (quoting *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 [2006]).

As we have discussed, the district court only committed one harmless error in this case by admitting Roepka's testimony about the estimated future value of the stolen equipment. Generally, one error is insufficient to support reversal under the cumulative error rule. *Anthony*, 282 Kan. at 217. Thus, Watson's cumulative error claim fails. An accused is entitled to a fair trial, not a perfect one. *State v. Broyles*, 272 Kan. 823, 842, 36 P.3d 259 (2001).

Affirmed.