NOT DESIGNATED FOR PUBLICATION

No. 112,858

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSE BUD SELLERS, JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed December 18, 2015. Affirmed in part and remanded with directions.

*Caroline Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., BUSER and SCHROEDER, JJ.

*Per Curiam*:  Jesse Bud Sellers, Jr., appeals following his convictions of felony theft, driving while suspended, and no proof of liability insurance. He argues (1) the prosecutor engaged in misconduct during closing argument by misstating the law on theft and (2) the journal entry of judgment contains a clerical error that must be corrected. For the reasons stated below, we affirm Sellers' convictions but remand with directions for the district court to enter an order nunc pro tunc correcting the clerical mistake in the journal entry with respect to the total costs imposed.

1

FACTS

In the early morning hours of August 24, 2012, Hutchinson Police Officer Darrin Truan responded to a residential burglary call at 720 William Street. On arrival, Truan made contact with Terry Tate, who advised Truan that he had seen two individuals taking items from a garage next door that was owned by Charles Bibbs. According to Tate, the individuals placed the items from the garage inside an older white Lincoln. Truan went inside the garage, where it appeared that a padlock on the door had been cut. Truan advised dispatch to put out a report describing the suspect vehicle.

Truan later made contact with Bibbs at the garage. Bibbs reported several items missing, including a pressure washer, a paint sprayer, an airless painter, electrical hand tools, and a chop saw. Bibbs said he kept the garage locked with a crossbar and lock on the walk-in door and a hasp and lock on the overhead door. Bibbs denied giving anyone permission to access the garage or take the missing items from inside. According to Bibbs, the stolen property was worth more than $3,000.

Reno County Sheriff's Deputy Richard Jennings was on routine patrol when he heard dispatch issue a report to be on the lookout for a white Lincoln that was involved in a possible burglary. Shortly thereafter, Jennings observed a car matching this description driving south. After running the car's tag through dispatch, Jennings learned that Sellers was the registered owner and that his driver's license had been revoked. Jennings initiated a traffic stop and approached Sellers, who was driving the car. After arresting Sellers for driving with a revoked license, Jennings conducted a search of Sellers' person and discovered a portion of a padlock in Sellers' front left pocket. After Jennings notified dispatch of this discovery, Officer Truan drove to the site of arrest and identified several items inside the Lincoln that appeared to be similar to the items described by Bibbs as missing from his garage. Truan then confirmed the piece of cut padlock discovered in Sellers' pocket matched a piece of cut shackle found on the ground in front of Bibbs'

garage and the key to Bibbs' garage opened the padlock. Bibbs himself then identified the padlock found in Sellers' pocket as the lock from his garage. Bibbs denied giving it to Sellers. Based on all of this information, Truan obtained a search warrant. A subsequent search of the Lincoln revealed metal bolt cutters and items identified by Bibbs as property stolen from his garage.

Following Sellers' arrest, Truan advised Sellers of his *Miranda* rights. Sellers agreed to speak with Truan. Sellers initially denied being on William Street that night or stealing anything from Bibbs' garage. According to Sellers, the items inside his car came from his girlfriend's storage unit. When Truan later interviewed him again at the jail, Sellers claimed he actually had purchased the items in his car from someone named "Moo Moo," who he later identified as Lucas Brown. Sellers then admitted that he and Brown went to Bibbs' garage but claimed that he had stayed outside while Brown went inside to retrieve the items. Sellers told Truan he did not know they were not supposed to take the items. When asked about the padlock found in his pocket, Sellers stated that it had been mixed in with the other items from the garage and he put it in his pocket for some reason.

The State charged Sellers with one count each of burglary, theft, driving while suspended, and no proof of insurance. At trial, Tate testified that on the night of the burglary, he was smoking a cigarette on his porch with his wife. Tate's cousin, Brown, and Sellers arrived at some point in a white Lincoln. According to Tate, Sellers encouraged Brown to leave with him and "go get into something." Tate said the two men left in Sellers' car and then turned around and parked in front of Bibbs' garage. Tate stated he left his porch to see what the men were doing. Tate observed the Lincoln's trunk and back passenger doors open and then saw Brown emerge from the garage carrying a red tool box and Sellers loading items into the car. Tate testified that he confronted the men, telling them to put the items back in the garage and threatening to call the police, which he did.

Sellers' version of events differed. Sellers testified that on the night of the burglary, he and Brown went to Tate's house. According to Sellers, Tate asked to borrow money from him. Sellers claimed that rather than just giving Tate money, he agreed to purchase tools and other items from Tate in exchange for the money. Sellers claimed Brown then retrieved the property from the garage and placed it inside his car. Sellers said he paid Tate $180 for the items, which included the padlock found in his pocket and the bolt cutters found inside his car. Sellers denied stealing the items; rather, he claimed he thought the items belonged to Tate and that he was helping Tate by purchasing them.

The jury found Sellers not guilty of burglary and convicted him of the remaining charges. The district court sentenced Sellers to an 11-month prison term for his theft conviction, concurrent to 6-month-concurrent jail sentences for each of the traffic offenses. The district court also ordered Sellers to pay $186 in restitution, $193 in court costs, and $400 in fines.

## ANALYSIS

Sellers raises two issues on appeal. First, he argues the prosecutor engaged in misconduct during closing argument by misstating the law on theft. Second, he alleges that the journal entry of judgment contains a clerical error that must be corrected. Each of these arguments is addressed in turn.

1. *Prosecutorial misconduct*

A claim of prosecutorial misconduct based on comments made during voir dire, opening statements, or closing arguments is reviewable on appeal even absent a contemporaneous objection. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009). Such a review involves a two-step process. First, an appellate court decides whether the comments at issue were outside the wide latitude a prosecutor is allowed, *e.g.*, when

4

discussing evidence. If the prosecutor's comments are found improper, an appellate court next determines whether the improper comments prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Bridges*, 297 Kan. 989, 1012, 306 P.3d 244 (2013).

In order to convict Sellers of theft, the State was required to prove that Sellers exerted unauthorized control over Bibbs' property with the intent to permanently deprive Bibbs of the use or benefit of the property. See K.S.A. 2014 Supp. 21-5801(a)(1). During closing argument, defense counsel argued that the State failed to meet its burden to prove these elements of theft. During the State's rebuttal argument, the prosecutor responded by stating:

> "[Defense counsel] argues to you that [Sellers] didn't have—he bought the stuff; he didn't steal it. Well, the elements of theft are that Mr. Bibbs was the owner of the property, which is uncontroverted. That the defendant obtained or exerted unauthorized control over the property. And Mr. Bibbs told you no one had authority or was authorized to control the property but him. The defendant obviously had it under his control. He obviously had it in his car. And he, so he had obtained and he was exerting unauthorized control. It wasn't authorized by Mr. Bibbs.
> "Now, the only final element of theft is did he intend to deprive Mr. Bibbs permanently. Well, where's he headed? He's headed on Yoder Road south where he lives in Wichita. And he told you he was going home. So that's for your common sense whether he intended to deprive him permanently."

A prosecutor commits misconduct by misstating the law applicable to a case. *State v. Akins*, 298 Kan. 592, 606, 315 P.3d 868 (2014). Sellers argues that the prosecutor's comments misstated the requisite intent required in order to convict him of theft by implying that Sellers could be found guilty of theft under K.S.A. 2014 Supp. 21-5801(a)(1) by simply possessing stolen property. Sellers asserts that the State was

actually required to prove that he (1) directly participated in the theft (2) with the intent to deprive Bibbs of his property.

But in order to convict Sellers of theft, the State was not required to prove that he actually stole Bibbs' property. The "taking" of property from the owner is not an element of the crime of theft under K.S.A. 2014 Supp. 21-5801(a)(1). All that is required to uphold a conviction under the statute is the exertion of unauthorized control over property along with the intent to permanently deprive the owner of the use or benefit of the property. *State v. Watson*, 39 Kan. App. 2d 923, 931, 186 P.3d 812, *rev. denied* 287 Kan. 769 (2008); see K.S.A. 2014 Supp. 21-5111(r) ("'Obtains or exerts control' over property includes, but is not limited to, the taking, carrying away, sale, conveyance, transfer of title to, interest in, or possession of property."). The prosecutor's comments during closing argument accurately reflected the evidence produced at trial and in no way misstated the legal elements required to prove theft.

Because the prosecutor's comments were not improper, we need not analyze whether the comments prejudiced the jury against Sellers.

2. *Clerical error*

Sellers argues that the journal entry of judgment must be corrected because it erroneously reflects the total amount of the costs the district court ordered him to pay at sentencing. The State does not address this issue in its brief.

Sellers correctly notes that the district court imposed the following costs at sentencing:  $186 in restitution, $193 in court costs, a $300 fine for driving on a revoked license, and a $100 fine for driving without proof of insurance. These costs total $779. But the journal entry of judgment mistakenly reflects that the costs total $829.

6

K.S.A. 22-3504(2) states that "[c]lerical mistakes in judgments . . . may be corrected by the court at any time and after such notice, if any, as the court orders." Accordingly, we remand the case to the district court with directions to issue a nunc pro tunc order correcting this clerical mistake.

Affirmed in part and remanded with directions to enter an order nunc pro tunc correcting the clerical mistake in the journal entry to reflect the total costs imposed.