NOT DESIGNATED FOR PUBLICATION

No. 117,837

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL NORTH,
*Appellant*.


MEMORANDUM OPINION


Appeal from Wyandotte District Court; MICHAEL GROSKO, judge. Opinion filed August 17, 2018. Affirmed in part and dismissed in part.


*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.


*Bryanna R. Hanschu*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BUSER, P.J., MALONE and STANDRIDGE, JJ.


PER CURIAM:  Michael North appeals his convictions of aggravated burglary, burglary, felony theft, and misdemeanor theft. North first claims the district court lacked jurisdiction to convict him because the State failed to bring him to trial within 180 days under the Agreement on Detainers Act (Agreement), K.S.A. 22-4401 et seq. North also claims there was insufficient evidence presented in the stipulated facts at his bench trial to sustain some of his convictions. As to the first claim, we find that the district court held the bench trial within 180 days of North's request as required by the Agreement, because several continuances requested by his counsel in open court properly extended the deadline to commence the trial. As to the second claim, we find that this court lacks

1

appellate jurisdiction to review the sufficiency of the evidence to sustain North's convictions based on the language of his notice of appeal. In any event, we find that the stipulated evidence was sufficient to sustain North's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

On January 21, 2016, the State charged North with one count each of aggravated burglary, burglary, felony theft, and misdemeanor theft. When the complaint was filed, North was serving a prison sentence in Missouri. In March 2016, North completed a request under the Agreement to dispose of the charges pending against him in Kansas. North's request was filed in Wyandotte County District Court on March 9, 2016.

On May 10, 2016, the district court appointed counsel to represent North, and counsel requested three continuances in open court of the preliminary hearing. First, at a hearing on May 17, 2016, counsel requested a 14-day continuance to May 31, which was granted. Second, at the hearing on May 31, 2016, counsel requested another 14-day continuance to June 14, 2016. Third, at the June 14 hearing, counsel requested a two-day continuance for a "preliminary hearing waiver."

At the hearing on June 16, 2016, North waived his preliminary hearing and the district court bound him over for trial. The district court also scheduled a pretrial conference for July 1, 2016. At the pretrial conference, the district court scheduled North's jury trial to begin on September 26, 2016.

On September 8, 2016, North's counsel filed a motion to dismiss based on the State's failure to bring North to trial within 180 days. At a hearing on September 20, 2016, North's counsel acknowledged that he had requested each continuance in open court. The district court found that the time from May 17, 2016, to June 16, 2016, was "properly chargeable to the defendant" and denied the motion to dismiss.

2

Following the denial of his motion to dismiss, North waived his right to a jury trial and the district court held a bench trial on September 26, 2016, instead of the previously scheduled jury trial on that date. At the bench trial, the parties stipulated in writing to the following facts:

"1. On August 31, 2015 Kansas City Kansas Police Officer Hunter attempted to stop a red Ford F-250 pickup truck.

"2. The pickup truck matched the description of a suspect vehicle that was used in several prior thefts at Ward's Carwash located in Wyandotte County, as well as a carwash in Riverside, Missouri.

"3. The driver of the truck fled from Officer Hunter and drove through a field, where he struck a fence. The driver then fled on foot to a nearby wooded area.

"4. The driver of the truck was a white male with jeans, a dark plaid shirt, a navy blue baseball cap and a white surgical mask around his neck.

"5. Staff Sergeant Howell completed a computer check on the truck which revealed that the registered owner was Joseph Arnone.

"6. Soon thereafter, a residential burglary occurred approximately two miles from the location of the incident involving the red F-250 pickup truck.

"7. On September 1st, 2015, a white male broke into Diana Billings' house located at 1301 N. 94th St. in Kansas City, Wyandotte County, Kansas. This man was not authorized to be in Diana's house.

"8. Entry was gained by kicking open the rear door of Diana's house, while Diana was asleep inside.

"9. Once inside, the suspect woke Diana up and asked for the keys to her car and for something to drink. The suspect told Diana that he had been running from the police all night and was not going to hurt her, but he needed her car to get away. Diana gave the suspect the keys to the car. The suspect also took a bottle of Gatorade from Diana's refrigerator and began drinking it. The suspect also took Diana's cell phone from a table in the living room. The Gatorade and the cell phone are valued at under $1,000.

"10. The suspect told Diana that he would leave the cell phone in the driveway and asked her to wait until she did not see the taillights anymore before she called the police. The suspect then fled with Diana's car, a 2000 Chevrolet Lumina valued at $3,000.

"11. On September 2nd, 2016, KCKPD Detectives Mansaw and Sneed, along with Riverside Detective Winson, went to Joseph Arnone's house to speak with him concerning the red Ford F-250 pickup truck that was registered to him.

"12. During the interview with Mr. Arnone, he told detectives that an hour or so before the detectives had arrived, his brother-in-law Michael North had showed up at his house and asked him if he knew where his truck was.

"13. Joseph told detectives that North had apologized to him and told him the following:

    a. He had driven Joseph's truck to a carwash in KCKS,

    b. He ran from police,

    c. He broke into an old lady's house, woke her up, and asked for the keys to her car so that he could get away,

    d. He did not hurt the lady,

    e. He took the lady's car,

    f. And after he took the lady's car, he drove to Joseph's house to spend the night there.

"14. Joseph told the detectives that North was authorized to drive his truck for the purpose of gathering materials and supplies to work on his house.

"15. Joseph also told detectives that he had met North in the parking lot of an old IHOP restaurant at the intersection of Chouteau TFWY and Vivian Road in KCMO.

"16. Once Joseph and North arrived at the location, North parked the lady's car and Joseph gave him a ride back to his house.

"17. Joseph told detectives that North was wearing a pair of light gray blue jeans and a plaid shirt. Joseph thought the shirt was blue and gray in color.

"18. Later, Detective Winson, drove to the location described by Joseph and located Diana Billings' stolen 2000 Chevrolet Lumina. The vehicle was bearing a switched license plate on the rear.

"19. Detective Winson waited at the scene until KCKPD CSI Officer Comer arrived.

"20. Shortly thereafter, North had been picked up in KCMO on unrelated charges.

"21. When North was arrested, Kansas City Missouri Sergeant Benson recovered what he believed to be Billings' car keys from North's pocket.

4

"22. Detective Winson later returned to the location of the recovered vehicle where he used the remote fob to unlock the car doors and confirm that the keys recovered from North did in fact belong to Billings' car.

"23. On September 3rd, 2015, Detective Sneed and Detective Mansaw went to North Kansas City Hospital to speak with North. North made the following spontaneous statements:

a. 'I told her I wouldn't hurt the car . . .'

b. 'I never laid a finger on that woman. I was very polite to her. She even asked me where I was from.'

c. 'I know I'm in deep shit, there's no question about that.'

d. 'I'm not a bad guy. I've never done nothing like that in my life.'

e. 'I was desperate. I got dudes chasing me.'"

The district court found North guilty as charged based on the stipulated facts. On October 31, 2016, the district court sentenced North to a controlling term of 25 months' imprisonment concurrent with his Missouri sentence. North timely appealed the district court's judgment. North's notice of appeal in its entirety states:

"COMES NOW, the Defendant and hereby appeals the decision of the Honorable Michael Grosko filed on September 26, [2016], denying the Defendant's Motion to Dismiss the case for the failure of the [State] to commence the trial of this matter within the time proscribed by the Agreement on Detainers, K.S.A. 22-4401."

On July 3, 2017, this court issued an order for North to show cause why his second issue on appeal challenging the sufficiency of the evidence should not be dismissed for lack of appellate jurisdiction based on the language in the notice of appeal. North responded to the show cause order, and his arguments will be addressed in this opinion.

AGREEMENT ON DETAINERS

North first claims the district court committed reversible error when it denied his motion to dismiss "based on a violation of the Uniform Mandatory Disposition of

5

Detainers Act (UMDDA)." Specifically, North argues that the district court lacked jurisdiction to convict him because the State failed to bring him to trial within 180 days of his request. The State argues that North was brought to trial within the deadline.

As an initial matter, North's argument on appeal raises this issue under the UMDDA. That act, however, establishes certain rights for an "inmate in the custody of the [Kansas] Secretary of Corrections." See K.S.A. 2017 Supp. 22-4301(a). Here, when North filed his request, he was not in custody in Kansas but was serving a prison sentence in Missouri. North filed his request for the disposition of his case on a form that complied with the Agreement. We will consider North's argument in light of the provisions of the Agreement, K.S.A. 22-4401, which applies when Kansas prosecutors have filed a detainer with authorities in another state against a person facing charges in Kansas.

Whether a defendant's statutory right to a speedy trial was violated is a question of law subject to de novo review. *State v. Breedlove*, 295 Kan. 481, 486, 286 P.3d 1123 (2012); see *State v. Angelo*, 287 Kan. 262, 268, 197 P.3d 337 (2008) (unlimited review over the application of detainer statute). To resolve the question presented on appeal, we must interpret and apply the Agreement. Statutory interpretation and the determination of jurisdiction involve questions of law over which an appellate court's scope of review is unlimited. *State v. Alonzo*, 296 Kan. 1052, 1054, 297 P.3d 300 (2013).

The UMDDA and the Agreement similarly grant to a person the right to request to be brought to trial on pending charges that are the basis for a detainer within a 180-day period. See K.S.A. 2017 Supp. 22-4303(b)(1)(A); K.S.A. 22-4401, Art. III(a). Under the Agreement, the person who is held in another state—the "sending state"—initiates the process by causing written notice of his request for a final disposition of his charges to be delivered to the prosecutor and the court in the state where the charges are pending—the "receiving state." K.S.A. 22-4401, Art. III(a); Art. II(b), (c). The receiving state must transfer the person from the sending state and resolve the criminal charges within 180

days after receipt of the notice. If the receiving state fails to bring the person to trial within that time, the court must dismiss the case. K.S.A. 22-4401, Art. V(c).

Under Article III of the Agreement, the 180-day countdown "commences only upon receipt of the prisoner's notice and request by the proper authorities in the state which filed the detainer against the prisoner." *State v. White*, 234 Kan. 340, Syl. ¶ 2, 673 P.2d 1106 (1983). North had the initial burden to show that he invoked his right to a speedy trial by substantially complying with the Agreement. See *In re Habeas Corpus Application of Sweat*, 235 Kan. 570, Syl. ¶ 5, 684 P.2d 347 (1984). The State does not contest that North properly sent his request and location both to the prosecutor and the court, meeting the initial requirements to bring him within the provisions of the Agreement. The parties agreed in district court that based on the date North filed his request, March 9, 2016, the 180-day deadline would expire on September 6, 2016.

The Agreement provides, however, that the statute can be tolled when the trial court grants a continuance for good cause, with the defendant present in person *or by counsel in open court*. K.S.A. 22-4401, Art. III(a); *State v. Waldrup*, 46 Kan. App. 2d 656, 671, 263 P.3d 867 (2011). Here, the district court granted three continuances of the preliminary hearing requested by the defense, all of which were addressed in open court and with North's counsel present. North does not dispute that these continuances were granted for good cause. Based on these continuances, the district court found that the trial on September 26, 2016, was within 180 days of North's request.

North argues that the three continuances of his preliminary hearing did not extend the 180-day deadline because he never requested a "trial continuance." North cites *State v. Watson*, 39 Kan. App. 2d 923, Syl. ¶ 4, 186 P.3d 812 (2008), a case construing the UMDDA, for this distinction. In *Watson*, this court held that under the plain language of K.S.A. 2015 Supp. 22-4303, it does not matter *which party* requests a continuance; any continuance granted by the court extends the 180-day deadline for commencing a trial

7

provided that the defendant's counsel received notice of the continuance request and had an opportunity to be heard. 39 Kan. App. 2d at 928. Although the facts of *Watson* involved trial continuances, the holding in that case was not limited to trial continuances. Instead, the plain language of the statute analyzed by the court in *Watson* specified that "the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for such prisoner to be heard." 39 Kan. App. 2d at 927; K.S.A. 2015 Supp. 22-4303.

Likewise, as the State argues on appeal, the plain language of the Agreement does not qualify the type of continuance that will toll the running of the 180-day clock: "*Provided*, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction on the matter may grant *any* necessary or reasonable continuance." (Emphasis added.) K.S.A. 22-4401, Article III(a). Moreover, in *Waldrup*, a case construing the Agreement decided after *Watson*, this court specifically held that a delay caused by the continuance of a preliminary hearing tolled the 180-day speedy trial period set forth in the Agreement. See 46 Kan. App. 2d at 671-76. Thus, there is no legal requirement that only "trial continuances" toll the 180-day time limit, as North asserts.

Here, the parties stipulated that North's request for the disposition of his case was filed on March 9, 2016, so the 180-day deadline initially expired on September 6, 2016. But the record is undisputed that North's counsel made three requests in open court for continuances of the preliminary hearing, totaling 30 days. North does not dispute that the continuances were granted for good cause. These continuances extended the 180-day deadline to October 6, 2016, and North's bench trial was held on September 26, 2016. Thus, there was no violation of the speedy trial provisions of the Agreement.

SUFFICIENCY OF THE EVIDENCE

Next, North claims there was insufficient evidence presented in the stipulated facts at his bench trial to sustain his convictions of burglary of the auto, felony theft of the

auto, and misdemeanor theft of the cell phone and the bottle of Gatorade. Specifically, North argues that the written stipulation of facts does not expressly state that these crimes were committed without authority, which is a statutory element of each crime. The State contends that North's stipulations and reasonable inferences drawn from them provided the district court with sufficient evidence to reasonably find that all of the elements of the charged crimes were proven beyond a reasonable doubt.

We will first address whether this court has appellate jurisdiction to address North's claim on appeal. An appellate court has a duty to question jurisdiction on its own initiative. When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. *State v. J.D.H.*, 48 Kan. App. 2d 454, 458, 294 P.3d 343, *rev. denied* 297 Kan. 1251 (2013). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Smith*, 304 Kan. 916, 919, 377 P.3d 414 (2016). The right to appeal is entirely statutory and is not contained in the United States or Kansas Constitutions. Generally, Kansas appellate courts have jurisdiction to entertain an appeal only if it is taken in the manner prescribed by applicable statutes. 304 Kan. at 919.

K.S.A. 22-3606 states that the statutes and rules governing procedure on appeals in civil cases shall apply in criminal cases. As to the form and contents of a notice of appeal, K.S.A. 2017 Supp. 60-2103(b) states: "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." An appellate court obtains jurisdiction only over the rulings identified in the notice of appeal. *State v. Garza*, 295 Kan. 326, 329, 286 P.3d 554 (2012). But a notice of appeal in a criminal proceeding is be read liberally and inclusively. *State v. Ransom*, 268 Kan. 653, 655, 999 P.2d 272 (2000).

Here, North's notice of appeal encompasses only the district court's denial of his motion to dismiss based on the State's failure to commence the trial within the time

9

proscribed in K.S.A. 22-4401. The notice of appeal does not state that North is appealing his convictions and it contains no catchall language that North is attempting to appeal any other adverse rulings. Even the most liberal reading of this notice of appeal does not allow this court to consider whether the evidence presented in the stipulated facts at the bench trial was sufficient to sustain North's convictions.

North argues that there is no requirement that a criminal defendant challenge the sufficiency of the evidence before the trial court in order to preserve the question for appeal. But North confuses preservation with jurisdiction. North is correct that a criminal defendant is not required to challenge the sufficiency of the evidence before the trial court in order to *preserve* the question for appeal. See *State v. Farmer*, 285 Kan. 541, Syl. ¶ 1, 175 P.3d 221 (2008). But this does not mean that we have jurisdiction to address North's challenge to the sufficiency of the evidence when his notice of appeal was expressly limited to the district court's ruling denying his motion to dismiss. If the notice of appeal had simply stated that North was appealing his convictions, we would agree that he could then challenge the sufficiency of the evidence for the first time on appeal. But that is not the situation we have here. We conclude that this court lacks appellate jurisdiction to review the sufficiency of the evidence to sustain North's convictions based on the language of his notice of appeal, no matter how liberally we construe the notice.

In the event our Supreme Court would disagree with our jurisdictional analysis on a petition for review, we will briefly address the merits of North's claim. "'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citations omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). The standard of appellate review

10

is de novo for cases decided by the district court based upon documents and stipulated facts. *State v. Dull*, 298 Kan. 832, 840, 317 P.3d 104 (2014).

North is correct that the written stipulation of facts presented at his bench trial does not expressly state that the challenged crimes were committed without the authority of the owner, Diana Billings. But as the State points out, the stipulated facts stated that the suspect told Diana that he had been running from the police all night and that he "needed her car to get away. . . .The suspect also took a bottle of Gatorade from Diana's refrigerator and . . . [he] also took Diana's cell phone from a table in the living room." The stipulated facts also stated that the suspect "fled with Diana's car, a 2000 Chevrolet Lumina valued at $3,000. . . . Later, Detective Winson . . . located Diana Billings' stolen 2000 Chevrolet Lumina. The vehicle was bearing a switched license plate on the rear." Finally, the stipulated facts stated that the suspect asked Diana "to wait until she did not see the taillights anymore before she called the police."

In a criminal trial, a fact-finder is permitted to reasonably infer the existence of a material fact from circumstantial evidence, even though the evidence does not exclude every other reasonable conclusion or inference. *State v. Kettler*, 299 Kan. 448, 470, 325 P.3d 1075 (2014). Here, the stipulated facts presented at North's bench trial created a reasonable inference that he committed the crimes in question without authority, satisfying the required statutory element for each crime. Viewing the evidence in the light most favorable to the State, we conclude there was sufficient evidence presented in the stipulated facts to sustain North's challenged convictions.

Affirmed in part and dismissed in part.