NOT DESIGNATED FOR PUBLICATION

No. 127,553

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NAKHALY CHINDAVONG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JACOB PETERSON, judge. Submitted without oral argument. Opinion filed October 17, 2025. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before BRUNS, P.J., SCHROEDER and ISHERWOOD, JJ.

PER CURIAM:  Nakhaly Chindavong, a prison inmate, timely appeals the district court's denial of his motion to dismiss his case, claiming the State failed to bring him to trial within the statutory time limit. After a thorough review of the record, we find no error in Chindavong's speedy trial rights as he was brought to trial within 180 days, given the continuances reasonably charged to him. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In July 2021, the State charged Chindavong with methamphetamine possession and violation of a protective order. Proceedings were continued for various reasons, and, on December 19, 2022, Chindavong filed an application under the Mandatory Disposition of Detainers Act (MDDA), K.S.A. 22-4301 et seq. (formerly known as the Uniform Mandatory Disposition of Detainers Act), for final disposition of his case while he was incarcerated with the Kansas Department of Corrections. The State, therefore, had to bring Chindavong to trial within 180 days of the filed request. See K.S.A. 22-4303(b)(1)(A).

In the following months, Chindavong filed a pro se motion for new counsel; the district court held a hearing on the motion and appointed new counsel, who needed more time to review the case; the jury trial was rescheduled as the State's office moved to a new location and the State had no access to its office or computers; and the parties were unable to find a workable trial date based on attorney schedules. In October 2023, Chindavong moved to dismiss for violation of the MDDA, claiming 297 days would have elapsed from the filing of his request for final disposition on December 19, 2022, to the scheduled trial date on October 12, 2023. Chindavong argued the violation resulted in the district court's loss of jurisdiction over him and the district court should have dismissed the case. At the hearing on his motion, Chindavong claimed a conservative calculation crediting time against him from the hearing on his motion for new counsel until trial was rescheduled still resulted in an MDDA violation as the 180-day time limitation would have expired on the date of the motion to dismiss hearing—before Chindavong was brought to trial.

The district court denied Chindavong's motion to dismiss under the MDDA, explaining every continuance it granted, regardless of whether it stemmed from the State or Chindavong, tolled the 180-day time limitation. After accounting for the continuances,

2

the district court found Chindavong's trial was "well under the 180-day time period." The parties proceeded to trial on stipulated facts, and the district court found Chindavong guilty of possessing methamphetamine and violating a protective order. Chindavong was sentenced to 40 months' imprisonment for methamphetamine possession and a concurrent sentence of 12 months in county jail for violation of a protective order. Additional facts are set forth as necessary.

ANALYSIS

Chindavong argues the district court erred in denying his motion to dismiss his case as the State violated his right to a speedy trial under the MDDA. Chindavong asks us to reverse his convictions, vacate his sentences, and remand to the district court with directions to dismiss with prejudice. The State suggests the MDDA's language allows any continuance the district court grants to extend the 180-day time limitation to bring a defendant to trial, unlike K.S.A. 22-3402, which precludes allowing the State's continuances to extend that statutory speedy trial deadline. The State contends the MDDA does not require special or explicit findings of good cause to extend the 180-day clock.

A defendant's statutory right to a speedy trial presents a question of law subject to de novo review. Statutory interpretation and determination of jurisdiction also involve questions of law over which we have unlimited review. *State v. Burnett*, 297 Kan. 447, 451, 301 P.3d 698 (2013).

K.S.A. 22-4301(a) allows inmates held in Kansas penal or correctional institutions to request final disposition of other criminal charges pending against them within the state. The MDDA "prevent[s] indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges, and it seeks to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a

3

reasonable amount of time." *Burnett*, 297 Kan. at 453. Our Supreme Court determined the MDDA was intended "to prevent the oppression of a confined prisoner in a penal institution by holding criminal prosecutions suspended over him for an indefinite time." *State v. Ellis*, 208 Kan. 59, 61, 490 P.2d 364 (1971). The MDDA was also intended "to prevent delays in the administration of justice by imposing on the judicial tribunals an obligation to proceed with reasonable dispatch in the trial of criminal cases." 208 Kan. at 61.

An inmate with only one detainer must be brought to trial on a complaint or information within 180 days from the time the district court and county attorney receive the certificate from the Secretary of Corrections of the inmate's request for final disposition. K.S.A. 22-4303(b)(1)(A). No Kansas court has jurisdiction after the 180-day time limitation expires, and the untried information or complaint must be dismissed with prejudice. K.S.A. 22-4303(b)(4). Criminal statutes are construed "strictly in favor of the defendant, and any reasonable doubt about a statute's meaning must be decided in favor of the accused. But this is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative intent." *Burnett*, 297 Kan. at 451.

The parties do not dispute Chindavong properly invoked his rights under the MDDA and the 180-day clock started to run on December 19, 2022—the date Chindavong's request for final disposition was received. Chindavong correctly contends the district court erred in finding the 180-day time limitation was tolled any time the court continued and rescheduled a hearing or trial.

The State had 180 days from December 19, 2022, to bring Chindavong to trial, which would be June 17, 2023. But June 17 was a Saturday, so the 180 days continued to run until Monday, June 19, which was then recognized as a judicial holiday. See K.S.A. 2022 Supp. 60-206(a)(1)(C); Kansas Supreme Court Administrative Order 2022-CC-080, effective November 23, 2022. The State thus had until Tuesday, June 20, 2023, to bring

4

Chindavong to trial. Chindavong moved to dismiss under the MDDA on October 6, 2023—291 days after his request for final disposition was received by the district court and county attorney.

But there are statutory exceptions to the 180-day deadline. In 2016, the Legislature removed language from the statute allowing the district court to grant a continuance with notice to the prisoner's attorney of record if the prisoner had an opportunity to be heard. See L. 2016, ch. 32, sec. 3. After 2016, the 180-day deadline could be extended if the district court found "good cause shown in open court" or "a continuance or delay had been requested or agreed to by the inmate or the inmate's attorney." K.S.A. 22-4303(b)(1)(C), (b)(2).

Here, the State and the district court were incorrect in relying on *State v. Watson*, 39 Kan. App. 2d 923, 928, 186 P.3d 812 (2008), for the proposition the 180-day MDDA time limit is extended whenever a continuance request is granted in open court and the defense has notice and an opportunity to be heard. *Watson* relied on the pre-2016 statutory amendment when a continuance would extend the deadline so long as there was notice and an opportunity to be heard—a provision that no longer exists. See 39 Kan. App. 2d at 928; compare K.S.A. 22-4303(b) with K.S.A. 2015 Supp. 22-4303(b).

Chindavong also asserts a district court's grant of a trial continuance for good cause under K.S.A. 22-3401 is distinguishable from a continuance for good cause under the MDDA. Chindavong asserts good cause to continue a trial is not necessarily good cause to extend the MDDA's 180-day time limitation. The State, on the other hand, claims the good-cause standard under K.S.A. 22-3401 and the good-cause standard under the MDDA are identical and require no special findings. However, the State contends K.S.A. 22-3402 does not extend the speedy trial deadline for a continuance requested by the State, whereas the MDDA allows any continuance granted by the district court to extend the 180-day timeline.

5

The State's argument is unpersuasive. K.S.A. 22-3402 explains a defendant must be brought to trial within either 150 or 180 days, depending on whether he or she is held in custody or released on bond, and provides specific instances in which an extension in the time limitation may granted. The MDDA is an entirely different act that becomes effective upon the defendant filing a request for final disposition and provides its own separate exceptions to extend the time limitation. See K.S.A. 22-4303(b).

In *State v. Grubb*, No. 121,769, 2020 WL 6372530 (Kan. App. 2020) (unpublished opinion), another panel of our court addressed the difference between speedy trial rights under K.S.A. 22-3402 and the MDDA. The *Grubb* panel explained the State's reliance on cases addressing the general statutory speedy trial right under K.S.A. 2019 Supp. 22-3402 or the constitutional speedy trial right had limited precedential application to cases under the MDDA, as the MDDA's speedy trial right was distinguishable. 2020 WL 6372530, at *3.

*Timeline*

After Chindavong filed his request for final disposition on December 19, 2022, the State's clock began counting under K.S.A. 22-4303(b). Two days later, the district court held a hearing to schedule a trial date. Defense counsel was unavailable on the first two dates the district court offered to set the jury trial in February—the first on February 14, 2023. The trial was set on March 9.

In *State v. Sherley*, 122,205, 2020 WL 7086173 (Kan. App. 2020) (unpublished opinion), a panel of our court attributed days to the defendant under an MDDA claim because, when the district court offered two dates for a pretrial conference, counsel requested the later date. The panel explained: "Sherley's counsel did not passively accept the later date—he intentionally requested it, making any delay chargeable to Sherley." 2020 WL 7086173, at *4. In making this finding, the *Sherley* panel relied on *State v.*

*Brownlee*, 302 Kan. 491, 507, 354 P.3d 525 (2015), for the proposition the State must prove "'more than mere passive acceptance and must produce some evidence of agreement to the delay by the defendant or defense counsel. The record must support a conclusion that the defendant expressly or impliedly agreed to the delay.'"

Here, defense counsel impliedly agreed to a delay from February 14 to March 9, 2023, and such time would count against the defense. But the State should not receive a windfall from the date the MDDA request was filed on December 19, 2022, until the date the district court offered to hold the jury trial on February 14, 2023, as that time would have counted against the State had the trial taken place as scheduled in February. The time from December 19, 2022, to February 14, 2023—57 days—counts against the State, while the time from February 14 to March 9—23 days—counts against Chindavong.

Chindavong argues the time from February 22, 2023—when the district court called off the jury trial to address Chindavong's pro se motion for new counsel—until the trial date on March 9—when the district court heard the motion and appointed new counsel—should not count against him. Chindavong contends his request for new counsel was not a request for a delay, nor was it an agreement to a delay. Chindavong asserts, under K.S.A. 22-4303(b)(2), a trial date within the 180-day deadline cannot be a delay. But in support of his position, Chindavong cites *State v. Wright*, No. 115,886, 2018 WL 3596738, at *3 (Kan. App. 2019) (unpublished opinion), which addresses statutory speedy trial rights under K.S.A. 22-3402(b), not the MDDA. Notably, Chindavong also asserts that speedy trial rights under K.S.A. 22-3401 and K.S.A. 22-3402 are distinguishable from the MDDA. Regardless, because Chindavong had already impliedly agreed to a delay from February 14 to March 9, time was already counting against him on February 22.

On March 9, 2023, defense counsel asked the district court to allow her to withdraw due to a breakdown in communication with Chindavong. Chindavong had also

filed a pro se motion for new counsel. The district court permitted counsel to withdraw, and Chindavong's new appointed counsel (appointed the same day) requested a status conference "about 30 days out" to allow him time to review the case file and receive discovery. A status conference was scheduled for April 21.

The time from March 9 to April 21, 2023—43 days—counts against Chindavong because he requested new counsel and his new counsel specifically requested the continuance to familiarize himself with the case and receive discovery. See K.S.A. 22-4303(b)(2). At the April 21 status conference, the State asked to have time assessed against Chindavong for MDDA purposes, including "[h]is motion to have new counsel and everything. . . . Or the continuance of the jury trial and going forward." That is, the State seemingly asked to have time assessed to Chindavong from either the time he filed his pro se motion for new counsel on January 31, 2023, or from the February 22 hearing in which the district court called off the March 9 trial to address Chindavong's pro se motion for new counsel in Chindavong's presence. The district court explained that time would be assessed to Chindavong for the reasons proffered by the State but did not distinguish whether it was assessing time to Chindavong from the time he filed his motion for new counsel or from the continuance of the jury trial going forward. Time counts against Chindavong from February 14 to April 21 as Chindavong impliedly agreed to a continuance from February 14 to March 9 based on counsel's unavailability and then asked for a continuance from March 9 to April 21 to review the case file.

At the April 21, 2023 status hearing, the parties were ready to set the matter for jury trial. The district court offered trial dates in May and June of 2023, but defense counsel was unavailable on those dates. The district court ultimately set the jury trial for July 6, 2023. For the same reasons stated above, defense counsel impliedly agreed to a delay from the first offered date of May 18 to July 6 based on his schedule and unavailability. Chindavong seems to acknowledge as much in his reply brief. Chindavong

8

argues that time should be assessed against the State up to May 18, and any time after that counts against himself.

In other words, the 27 days from April 21 to May 18, 2023—when the district court offered a jury trial date but defense counsel was unavailable—would count against the State, while the 49 days from May 18 to July 6—the date the jury trial was scheduled—would count against Chindavong as he caused and impliedly agreed to a delay from the first date the district court offered to set the jury trial to the July date. Again, the State should not receive a windfall for the entire time frame from April 21 to July 6 because time would have resumed counting against the State on April 21 until the trial could have been scheduled on May 18.

The district court held a pretrial conference on June 16, 2023—when time was counting against Chindavong—and addressed the State's motion to continue because its office was moving and the State would have no access to its office or computers on the day of the scheduled jury trial. Chindavong stated he understood the reason for the State's continuance and had no objection. The district court explained:

> "In light of the defendant's lack of objection, the Court will grant the State's motion to continue. Especially in light of the circumstances, which is largely prompted by the court remodeling [its] facilities. So it's really not the State's fault they are having to as well. So, I'll grant the motion to continue."

A status conference was scheduled for July 21, 2023. While the district court did not use the words "good cause" in granting the continuance, it explained in open court the circumstances were out of the parties' control and was not the State's fault. Even if we find the district court failed to explicitly make a good-cause finding to extend the MDDA deadline from June 16 to July 21, Chindavong had no objection to the delay, and we count the time against him because he agreed to the continuance. See K.S.A. 22-

9

4303(b)(2). But time was already counting against Chindavong from May 18 until July 6, given the need for a continuance based on his counsel's schedule. The time would continue to count against Chindavong until the newly scheduled status hearing on July 21. Even if our calculation is wrong from July 6 to July 21, we are only talking about 15 days, and it still reflects Chindavong was tried within 180 days (149 + 15 = 164).

At the status hearing on July 21, 2023, Chindavong had another attorney filling in for his original counsel. The district court asked if Chindavong's primary counsel would be comfortable going to trial in mid to late August or would prefer looking at dates in September. Counsel explained Chindavong could be ready for trial in August but, because of a congested schedule, September would be better. The district court suggested two dates in September, but counsel was unavailable. Based on defense counsel's schedule, the district court set the jury trial for October 12, 2023.

Time should again start counting against the State on July 21, 2023, but, because Chindavong could have been prepared for jury trial in mid to late August and simply preferred September, time starts counting against him in mid-August (presumably August 15, 2023), which would add 25 days attributable to the State. This scenario is like that in *Sherley*, where days were attributed to the defendant because defense counsel requested the latter of two dates offered by the district court. 2020 WL 7086173, at *4. Chindavong's counsel did not passively accept the later date; he intentionally requested the later date, making the delay chargeable to Chindavong. And from mid-August (August 15) to October 12, Chindavong's counsel was unavailable and agreed to a trial date on October 12, adding 58 days attributable to Chindavong.

Chindavong moved to dismiss for violation of the MDDA on October 6, 2023; the district court held a hearing on the motion a few days later and found Chindavong's speedy trial rights under the MDDA were not violated. The parties agreed to proceed to trial on stipulated facts, and the district court scheduled trial on October 18, at which time

the parties had agreed on the stipulated facts, but the State needed to gather exhibits for the district court's review. The district court set a hearing for November 1, 2023, to enter a judgment and verdict after receiving the documents from the State. At the November 1 hearing, the State still had not provided all exhibits to the district court, and the matter was again continued to November 21, when the district court found Chindavong guilty beyond a reasonable doubt based on the stipulated facts and exhibits. The delay from October 12 to November 21—40 days—was attributable to the State.

Chindavong was brought to trial 337 days after he filed his request for final disposition under the MDDA. But only 149 days were attributable to the State, while 188 days were counted against Chindavong. Even if we are a few days off in our accounting of how the days should be charged to Chindavong, the district court did not err in denying his motion to dismiss as the State brought him to trial within 180 days. See K.S.A. 22-4303(b)(1)(A).

Affirmed.