STATE of Missouri, Plaintiff-Respondent,

v.

**Robert Harry PLANT,
Defendant-Appellant.**

No. 35840.

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 27, 1976.

Shaw & Howlett, Terry J. Flanagan, William J. Shaw, Public Defender, Mary E. Fiser, Asst. Public Defender, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Timothy J. Verhagen, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Frank J. Kaveney, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

DOWD, Judge.

Defendant appeals his conviction for attempted burglary second degree. § 560.045 RSMo 1969. He was sentenced to five years imprisonment by the trial court pursuant to the Second Offender Act.[1] § 556.-280 RSMo 1969. We affirm.

A jury could have reasonably found that on the evening of January 1, 1968, the Brentwood police, alerted by a citizen, went to the rear of a retail establishment and discovered evidence of an attempted burglary. Shortly thereafter the police arrested the defendant and a companion a short distance from the store. The arresting officer immediately advised the defendant of his constitutional rights; the defendant replied that he understood his rights but did not want an attorney. At the police station the defendant was again advised of his constitutional rights, and again he said he understood those rights. The defendant then made an oral statement, saying he had used a screwdriver to try to break into the store in order to "steal some stuff." The defendant then voluntarily led the police to the store and identified it as the place he had attempted to burglarize. He also helped the police in a two and one-half hour unsuccessful search of the surrounding area for the screwdriver he had discarded. Back at the police station the defendant, after again being informed of his constitutional rights, signed a written confession that he had used a screwdriver to try to pry open a door to get money.

 Although defendant raises four issues on appeal, we do not reach the merits

of the first three.[2] The first two points on appeal were not raised in the defendant's motion for a new trial, and thus they are not preserved for appellate review. Rule 27.20(a); *State v. Henderson,* 510 S.W.2d 813[12] (Mo.App.1974).

Defendant's third point on appeal is that the trial court erred in denying his motion to suppress and exclude his "confessions of fact and statements against interest" because his statements were not given voluntarily. We do not reach this issue because the supporting argument in defendant's appellate brief fails to comply with Rules 84.-04(a) and (e).

The defendant's "argument" under this point consists of the following:

"On the question of voluntariness the appellant would ask this Court to review pages 2 through 78 of the transcript. Defendant's motion to suppress and consider the 'totality of the circumstances' surrounding how defendant's statements were obtained as was dictated in [citing four cases]. Appellant also asks this Court to review the testimony of his mother and sister concerning his physical appearance when considering all the facts."

 Defendant's "argument" is really no argument at all, as envisaged by Rules 84.04(a) and (e), but merely a request that we review the transcript. This court has no duty to search the record in order to ascertain specific arguments in support of defendant's contention that his confession was involuntary. See *Butterbaugh v. Pub-*

---

1. Defendant had 8 prior felony convictions.

2. The first point is that the "court erred in overruling defendant's motion for judgment of acquittal made at the close of the state's evidence due to the fact that the state had not offered sufficient evidence to make a submissible case."

 After defendant's motion for judgment of acquittal made at the close of the state's evidence was denied, the defendant offered evidence in his behalf. By so doing, he

waived any claim of error as to this motion. *State v. Turnbough,* 497 S.W.2d 856[1] (Mo. App.1973).

 Defendant's second point is that the "court erred in overruling defendant's motion to suppress and exclude confessions of fact and statements against interest in that: A) Said statements were not admissible since no corpus delecti had been established prior to their introduction."

*lic Water Supply District No. 12,* 512 S.W.2d 445[3] (Mo.App.1974). The defendant's argument is totally unproductive of any assistance to this court and is completely unacceptable under either the letter or intent of the appellate review rules. *Cady v. Kansas City Southern Railway Co.,* 512 S.W.2d 882[9] (Mo.App.1974).

We have, sua sponte, examined the record to determine whether to invoke the plain error doctrine as provided for by Rule 27.20(c). We do not find that injustice or miscarriage of justice will result from the refusal to invoke the plain error doctrine. To the contrary, we are convinced that the transcript demonstrates that there was overwhelming evidence of defendant's guilt. *State v. Hurtt,* 509 S.W.2d 14 (Mo. 1974).

Defendant's final contention is that he was denied the right to a speedy trial through the state's failure to comply with the law governing the Agreement on Detainers. §§ 222.160–.220 RSMo Supp.1973. We disagree.

The Missouri Agreement on Detainers law became effective on June 21, 1971. Article I of the statute finds that "charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Accordingly, Articles III through IX specify procedures whereby a prisoner can be transported from a state in which he is presently incarcerated to a state where he will be tried for pending charges.

We believe the state in this case followed the applicable procedural steps in a timely fashion. A "Request for Temporary Custody, Form V," dated September 19, 1972, was initiated by the state on December 1, 1972. The court file indicates the following: "12/1/'72 Agreement of Detainer filed, Form V." Pursuant to Article IV, the court transmitted it to the prison authorities in Tennessee, where defendant was imprisoned for burglary. The defendant testified that "on December 5, 1973 [1972], I received a couple of records of request for temporary custody."

Once a prisoner has been informed that a detainer has been filed, two courses of action are open to him, both of which affect the time of his upcoming trial. Under Article III, if the prisoner asks both the prosecutor and the court to make a final disposition of the charge, then he must be brought to trial within 180 days of the delivery of his request. If the prisoner does not make this request for final disposition, Article IV provides the trial must be commenced within 120 days of his arrival in the receiving state.

At a pretrial hearing the defendant mentioned he had written a letter to a prosecuting official after he learned of the detainer, but he then denied ever requesting a final disposition of the charge. Accordingly, under Article IV, defendant had to be tried within 120 days of his arrival in Missouri.

The defendant was brought back to Missouri on June 26, 1973. The trial was set for August 27, 1973, but the defendant requested and was granted a continuance until the actual trial date of September 12, 1973. The defendant's trial thus began 78 days after his return to Missouri, well within Article IV's 120-day limit.

Article V provides that the court must dismiss the charges if (a) the state either fails to or refuses to accept temporary custody of the prisoner, or (b) if the prisoner is not brought to trial within the time limits specified in Articles III and IV. There is nothing in the record to show that the State of Missouri either failed to or refused to accept the temporary custody of the prisoner. Likewise, the defendant's trial was commenced 78 days after his arrival in the

State of Missouri which is compliance with the Agreement on Detainers Law. Sections 222.160–.220 RSMo Supp.1973.

The defendant suggests the State of Missouri was responsible for an unduly long delay in bringing him back to Missouri. The record is not clear why there was a seven-month gap between the filing of the detainer and the date defendant was returned to Missouri. However, there is nothing in the record to indicate that officials of the State of Missouri were responsible for the delay.

The judgment is affirmed.

WEIER, P. J., and RENDLEN, J., concurs.