No. 54,760

STATE OF KANSAS, *Appellee,* v. HOWARD WHITE, *Appellant.*

(673 P.2d 1106)

Opinion filed December 2, 1983.

*Daniel A. Duncan,* of Kansas City, argued the cause and was on the brief for the appellant.

*Jerome A. Gorman,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict finding Howard White (defendant-appellant) guilty of aggravated robbery (K.S.A. 21-3427). The appellant contends he was not timely brought to trial according to the provisions of the Agreement on Detainers, K.S.A. 22-4401 *et seq.*, and the trial court erred in admitting hearsay evidence.

The following evidence was presented at trial. Around 9:30

a.m. on March 9, 1981, the Kansas City Police Department received a call about a small boy left unattended in a black and gold Cadillac with Colorado license tags. The caller had observed a man park the car and leave with another man in a black and gold Buick with Missouri license tags, leaving the child unattended. Upon their arrival police officers found six-year-old Joseph Jackson and his one-year-old brother in the Cadillac. Joseph told the officers a man named Wallace had brought them there and had left in another car driven by his father, Howard White. The children were taken to police headquarters.

Police conducted a stake-out of the Cadillac, thinking it might be a possible getaway car. Shortly thereafter a black man ran to the car and got in it. When police officers approached the car and identified themselves, the man drove off. While in pursuit, the officers received word of a holdup at a nearby bank by two black males driving a Buick with Missouri license tags. They spotted a Buick matching the description of that suspect car parked a short distance from where the Cadillac had been parked.

Several officers converged on the area where the Buick was parked and began to search for the other suspect. Police saw a man on foot matching the description of the suspect. He fled when the officers approached him. As the search continued a woman came out of her home and told police a man was in her house and had requested a shirt and razor. The suspect was arrested. Meanwhile, the driver of the Cadillac was apprehended and was identified as one of the robbers. The appellant was identified at trial as the other perpetrator of the robbery.

The appellant first contends he was not brought to trial within the time limit set forth in the Agreement on Detainers, K.S.A. 22-4401 *et seq.*

Following his arrest the appellant was freed on bond. He was subsequently arrested in Colorado for armed robbery. He entered a guilty plea and was incarcerated at a correctional facility in Colorado. The appellant was notified the State of Kansas had filed a detainer against him. He requested a final disposition of the detainer, which was mailed by the Superintendent of the Colorado State Penitentiary on October 1, 1981, and received by the Clerk of the District Court of Wyandotte County on October 5, 1981. The appellant was tried on April 5, 1982, 182 days after

the request was received by the clerk of the district court. The 180th day fell on Saturday, April 3, 1982.

The interstate Agreement on Detainers provides two methods for the disposition of charges pending against a prisoner incarcerated in another state or federal institution. See generally Annot., 98 A.L.R.3d 160, § 2. Article III of the Agreement prescribes the procedures for a prisoner to follow in requesting disposition of charges for which a detainer has been filed against him. This Article provides in pertinent part:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty (180) days *after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; Provided,* That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (Emphasis added.) K.S.A. 22-4401.

Article IV(a) of the Agreement permits prosecuting authorities in the state in which charges are pending against a prisoner to obtain his custody for trial from the state where he is incarcerated. Where custody of a prisoner is requested *by the prosecuting state the trial "shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state,"* (emphasis added) except for necessary or reasonable continuances granted by the trial court for good cause shown. K.S.A. 22-4401, Article IV(c).

The appellant first contends the 120-day time limit contained in Article IV should apply to all cases handled under K.S.A. 22-4401 *et seq.* The time limits applicable under the two procedures contained in the Agreement were previously addressed by this court in *State v. Clark,* 222 Kan. 65, 67, 563 P.2d 1028 (1977):

"Under the Agreement, once a detainer has been lodged the authorities having custody of the prisoner 'shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition' thereof. (K.S.A. 22-4401, Art. III[c].) If the prisoner properly enters a request, he must be returned to the jurisdiction in which the detainer was filed and tried within 180 days of the time he requests disposition. If the prisoner makes no request for disposition, he must be tried within 120 days

from the time he is returned to the requesting state. Failure to try the prisoner within the applicable time requires dismissal of the charges upon which the detainer is based."

Other authorities have similarly recognized the 120-day time limit contained in Article IV is controlling only where the prisoner is returned for trial pursuant to the request of prosecuting authorities in the state where the charges are pending. See *Shewan v. State*, 396 So. 2d 1133 (Fla. Dist. App. 1981); *State v. Plant*, 532 S.W.2d 900, 902 (Mo. App. 1976); Annot., 98 A.L.R.3d 160, § 28[a], and cases cited therein.

The provisions of the statute are clear and straightforward. Where the prisoner requests a disposition of the detainer filed against him under Article III he must be brought to trial within 180 days "after he shall have caused to be delivered to the prosecuting officer and the appropriate court" written notice of his request. The 120-day provision in Article IV controls where the prisoner is returned for prosecution upon the request of the state which filed the detainer. No language is contained in the statute to support the interpretation suggested by the appellant. Furthermore, such an interpretation would render the 180-day time limit contained in Article III meaningless.

The appellant next contends the 180-day time limit contained in Article III begins to run on the date the prisoner's notice and request for disposition is mailed rather than the date it is received by prosecuting authorities in the state where charges are pending. In support of this the appellant compares the language contained in the Agreement with a similar time limitation found in the Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 *et seq*. The Agreement on Detainers requires the prisoner be brought to trial within 180 days "after he shall have caused to be delivered to the prosecuting officer and the appropriate court" written notice of his request for final disposition, whereas the Mandatory Disposition of Detainers Act states that the prisoner shall be brought to trial within 180 days "after the receipt of the request and certificate by the court and county attorney." K.S.A. 22-4303. The appellant contends he was entitled to have the charge against him dismissed because he was not brought to trial until 187 days after he caused his request to be mailed to Wyandotte County.

This court has previously recognized that while the purposes

of the Act and Agreement are analogous they are not alike or identical in all respects. See *State v. Clark*, 222 Kan. at 68. In *State v. Dolack*, 216 Kan. 622, 633, 533 P.2d 1282 (1975), we held that in ruling the State had not failed to bring the defendant to trial within 180 days the fact the district court had referred to the Mandatory Disposition of Detainers Act rather than the Agreement on Detainers was immaterial, since the rights of inmates confined in this state or in another state to a speedy trial were governed solely by the detainer statutes. We held:

"To obtain a speedy trial guaranteed by Section 10 of our Bill of Rights, as legislatively defined by either of the two Acts just referred to, it is incumbent upon an accused incarcerated in a penal institution to comply with all the provisions of the Act applicable to his incarceration, including the preparation of his written request for disposition of detainer to be addressed to the court in which the indictment, information or complaint is then pending against him and to the county attorney charged with the duty of prosecuting it." 216 Kan. at 634.

We cannot say the different language used in the two acts with respect to the time limit within which the prisoner must be brought to trial is indicative of the legislative intent that separate meanings are to be accorded the similar provisions.

Most courts which have addressed the issue presented here have recognized the 180-day speedy trial period begins to run only upon receipt by the proper authorities of the prisoner's notice and request. See, *e.g., People v. Bielecki*, 41 Colo. App. 256, 258, 588 P.2d 377 (1978); *State v. Arwood*, 46 Or. App. 653, 655-56, 612 P.2d 763 (1980); *State v. Plant*, 532 S.W.2d at 902; *State v. Ternaku*, 156 N.J. Super. 30, 34, 383 A.2d 437 (1978); Annot., 98 A.L.R.3d 160, 208, § 15(a), and cases cited therein. In deciding the 180-day period commenced on the date the notice and request is received by the prosecutor and appropriate court, the court in *State v. Ternaku*, 156 N.J. Super. at 34, stated:

"The language of the statute is explicit. It provides for the commencement of the 180-day period when defendant has 'caused to be delivered to the prosecuting officer and the appropriate court', the written notice and request for final disposition of the pending indictment. The Legislature clearly intended that the documents be delivered to the prosecutor and the appropriate court before the 180-day period starts to run. The period does not start to run upon mere execution and delivery of the notice and request to the warden, commissioner of corrections or other official having custody of defendant. In our view it would be contrary to the public interest to start the running of the 180-day period prior to actual receipt of the notice and request by the prosecutor and the court. If we were to interpret the statute as defendant requests, an indictment would be subject to

dismissal each time delivery of the documents to the prosecutor and court is delayed, regardless of cause. We cannot conceive our Legislature as intending such a result by enacting the Interstate Agreement on Detainers. As a matter of fact, had the Legislature intended the 180-day period to begin from the time a defendant delivers the notice and request to the warden, commissioner of corrections or other official having custody over him, it could have so signified by appropriate language."

We subscribe to this reasoning and believe the result reached effectuates the purpose of the Act. We do not think the legislature intended that prisoners were entitled to dismissal of the charges against them where their request and notice is lost or delayed in the mail. The State should not be required to bring the defendant to trial within 180 days of the time the request was mailed, regardless of when it was received.

Here the notice and request were received by the Clerk of the Wyandotte County District Court on October 5, 1981. There is no indication in the record on appeal when the request was received by the district attorney's office so we assume for the purpose of this appeal it was before or on the same date. Accordingly, the 180-day period began to run on October 5, 1981, and ended on April 3, 1982, which was a Saturday. K.S.A. 60-206(*a*) provides that where the last day of the period to be computed falls on a Saturday, Sunday or legal holiday the period runs to the end of the next day which is not a Saturday, Sunday or legal holiday. It further provides:

"When an act is to be performed within any prescribed time under any law of this state, or any rule or regulation lawfully promulgated thereunder, and the method for computing such time is not otherwise specifically provided, the method prescribed herein shall apply." K.S.A. 60-206(*a*).

No other method for computing the speedy trial provision is contained in the Agreement on Detainers. The trial commenced on Monday, April 5, 1982. The words "brought to trial" contained in Article III mean only that a proceeding must be initiated, not that the case be finally disposed of. *People v. Beamon,* 83 Mich. App. 121, 129, 268 N.W.2d 310 (1978). Accordingly, we find the appellant was properly brought to trial within the 180-day speedy trial provision contained in Article III of the Agreement on Detainers. See *People v. Bielecki,* 41 Colo. App. at 258.

As his final point on appeal the appellant contends the trial court erred in admitting into evidence the statements made by

young Joseph Jackson to the police officers. The trial court admitted the statements on the ground they were not offered to prove the truth of the matter asserted, but to explain the actions of the officers in staking out the Cadillac. A limiting instruction was given directing the jury to consider the statements only for that purpose and not to establish the identity of the accused.

This court has held that statements of dispatchers or informants, offered only to explain the course of action of an investigating officer, are admissible. See *State v. Laubach,* 220 Kan. 679, 683, 556 P.2d 405 (1976), and cases cited therein. However, the substance of a communication by an informant to a police officer is inadmissible hearsay when it tends to identify the accused and establish his guilt. *State v. Thompson,* 221 Kan. 176, 179, 558 P.2d 93 (1976). In *Thompson,* testimony concerning an anonymous phone call to a police officer advising that a crime under investigation was committed by a man identified as "Crazy John" was held to be inadmissible.

We note that in the absence of the hearsay testimony the evidence against the appellant was largely circumstantial, although sufficient to support the conviction. The appellant testified he was in the area where he was apprehended trying to locate the home of a girl he had been out on a date with the day before, and he fled from the officer who approached him because he did not know the officer and was afraid of being robbed. There was no physical evidence produced at trial linking the appellant to the Buick. Although the victim identified the appellant at the preliminary hearing and at trial, this identification was brought into question on cross-examination because of the short length of time the victim was able to observe the robbers and the victim's failure to identify the appellant from a lineup the day of the robbery. Thus, the hearsay statements of Joseph Jackson, a six-year-old, were essential to place the appellant in the area at the time of the robbery and establish him as the driver of the Buick. The hearsay statement asserted for this purpose is inadmissible under the exception addressed in *State v. Thompson.*

This hearsay testimony was admissible, however, under another exception to the hearsay rule contained in K.S.A. 1982 Supp. 60-460(*d*)(3), which makes hearsay admissible on the ground of necessity. It provides:

"(d) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement [is admissible] . . . (3) if the declarant is unavailable as a witness, by the declarant at a time when the matter had been recently perceived by the declarant and while the declarant's recollection was clear and was made in good faith prior to the commencement of the action and with no incentive to falsify or to distort."

Under this exception (1) the declarant must be unavailable as a witness, (2) the matter described must have been recently perceived by the declarant and the statement made while his memory was fresh, and (3) it must have been made under circumstances so as to show that it was in good faith, before there was an action pending and with no incentive to falsify or distort. See *State v. Hobson,* 234 Kan. 133, Syl. ¶ 11, 671 P.2d 1365 (1983); 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-460(d), p. 240 (1979).

Here the prosecutor stated to the court the declarant, Joseph Jackson, could not be located. The statements made to the officer explained why he and his younger brother were alone in the car and where the driver had gone. The statements were made shortly after they had been left alone. It is highly doubtful the six-year-old would make the statements except in good faith and without any incentive to falsify or distort, as he was merely responding to the inquiries of the officer concerning why he and his brother were left alone in the car. These statements were obviously made prior to the commencement of the criminal prosecution. Accordingly, the statements were admissible under K.S.A. 1982 Supp. 60-460(*d*)(3). See *State v. Churchill,* 231 Kan. 408, 417-18, 646 P.2d 1049 (1982); *State v. Adams,* 223 Kan. 254, 255, 573 P.2d 604 (1977). The judgment of the trial court, if correct, is to be upheld, even though the court may have relied upon a wrong ground or assigned an erroneous reason for its decision. *Crane v. Mitchell County U.S.D. No. 273,* 232 Kan. 51, 65, 652 P.2d 205 (1982); *Farmers State Bank v. Cooper,* 227 Kan. 547, Syl. ¶ 10, 608 P.2d 929 (1980).

The judgment of the lower court is affirmed.