NOT DESIGNATED FOR PUBLICATION

Nos. 117,118
117,119

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SEMAJ LEONARD FOSTER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed August 24, 2018. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., MALONE and STANDRIDGE, JJ.

MALONE, J.:  Semaj Leonard Foster appeals his convictions of aggravated robbery and attempted aggravated robbery arising from two separate cases in Johnson County District Court. Foster admitted that he committed the crimes, and he received the sentence that he requested. His sole claim on appeal is that the district court lacked jurisdiction to convict him because the State failed to bring him to trial within 180 days of his request under the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq. Foster's claim fails for two reasons. First, we agree with the district court that Foster failed to substantially comply with the provisions of the

1

UMDDA in order to trigger the 180-day clock. Second, even if Foster substantially complied with the provisions of the UMDDA, the State did not exceed the 180-day time period. Thus, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 2012, the State charged Foster in Johnson County case 12CR1041 with one count of aggravated robbery and one count of attempted aggravated robbery. About three months later, on August 16, 2012, the State charged Foster in Johnson County case 12CR1692 with one count of attempted aggravated robbery.

The district court initially took little action in either of the Johnson County cases because Foster was being held in custody in Wyandotte County on many charges, including aggravated robbery. On October 6, 2014, Foster pled guilty to one count of aggravated robbery in Wyandotte County in exchange for dismissal of the other charges. On November 21, 2014, the district court sentenced Foster to 59 months' imprisonment with the Kansas Department of Corrections (KDOC). After the sentencing hearing, Foster remained in the Wyandotte County jail awaiting transport to the KDOC.

According to Foster's motion to dismiss that he later filed in both Johnson County cases, the following events took place while he was in the Wyandotte County jail. On December 4, 2014, Foster sent an inmate request to the jail stating: "I need to have a 180 day writ filed so I can take care of my warrants in Johnson County." On December 6, 2014, Foster sent another inmate request to the jail stating: "If possible can you guys file a 180 day writ for me please and thank you." Ashley Tayler, a programs assistant with the Wyandotte County sheriff's office, was assigned to Foster's request.

On December 8, 2014, Tayler met with Foster and provided him with a form titled "Uniform Mandatory Disposition of Detainers Act." The form stated: "I make this

2

application with the purpose of either my detainer being dropped or that I may be taken from this institution to stand trial." The form referenced Johnson County case numbers 12CR1041 and 12CR1692 and indicated the charges were aggravated robbery and attempted aggravated robbery. Foster signed the form and Tayler notarized the signature. The record on appeal contains no envelope reflecting the destination of the form, but it is undisputed that the form was mailed only to the Johnson County District Court and not the Johnson County district attorney's office.

The Johnson County District Court clerk received and filed the document on December 12, 2014. The clerk made a handwritten notation at the bottom of the document: "CC-DIV#6/CC-DA/CC-DEF." The notation reflects that the clerk would have normally placed a copy of the document in the district attorney's box in the clerk's office. At the hearing on the motion to dismiss, the prosecutor stated that his office had no record of ever receiving the document from the clerk's office.

In April 2015, the assistant district attorney previously assigned to Foster's cases discovered a notation about the UMDDA request in the electronic case file. On May 8, 2015, the district court ordered Foster transported from the Ellsworth Correctional Facility where he was being held to the Johnson County jail. On May 20, 2015, Foster was present in district court for a first appearance. The district court appointed the public defender's office to represent Foster and set the matter over to May 28, 2015.

At the hearing on May 28, 2015, Foster's defense counsel requested the district court to set both cases for a preliminary hearing. Based on the court's busy docket and the amount of time the parties anticipated they would need for a preliminary hearing, the district court indicated that August 12, 2015, was the earliest possible date for that hearing. The State asked the district court to make a finding of good cause for the delay in scheduling the preliminary hearing because of the court's crowded docket. Foster's counsel argued that a good cause finding was unnecessary because the cases were not

3

being set beyond the 180-day time limit. In any event, the district court noted that August 12 was the earliest date it could set the preliminary hearing and stated, "To the extent that that is a finding that stays the speedy trial disposition of the detainer, then so be it."

On August 12, 2015, the district court held a preliminary hearing in both cases and bound Foster over for trial on all counts. The district court was aware that the cases were subject to a 180-day deadline and proposed August 24, 2015, as the trial date. The prosecutor indicated that she was unavailable on that date but that she would check to see if someone else in her office could handle the trial. At that point, Foster's counsel indicated that he also was unavailable on August 24. The district court asked counsel if someone else in the public defender's office could handle the trial, but counsel stated that he was unwilling to transfer the case to a colleague. The district court found that it had offered August 24, 2015, as a trial date, but the defense could not be present, so a continuance after that date would be charged to Foster. The district court set both cases for trial on October 19, 2015. The court assessed the days between August 12 and August 24 against the State, and the days from August 24 to October 19 against Foster. The district court explained its ruling to Foster, who stated that he understood.

On September 24, 2015, Foster filed a motion to dismiss the two cases for failure to bring him to trial within 180 days and argued that the district court lacked jurisdiction to hear the cases. Foster claimed that he substantially complied with the UMDDA and that the time limit within which the State was required to bring him to trial expired on June 10, 2015, 180 days after his UMDDA request was filed with the district court on December 12, 2014. Foster also filed a supplemental brief in support of his motion to dismiss. The State filed a written response to the motion.

The district court held a hearing on Foster's motion to dismiss on November 24, 2015. After hearing arguments from counsel, the district court found that Foster had not substantially complied with the provisions of the UMDDA in order to trigger the running

4

of the 180-day clock. Specifically, the district court found that Foster did not mail his request for final disposition of the charges to the county attorney and he failed to deliver a copy of his request to the proper custodial official as required by the statute. The district court found that even if there was substantial compliance, the 180-day time period had not expired because the delay from May 28, 2015, to August 12, 2015, had been granted by the court for good cause. Thus, the district court denied Foster's motion to dismiss.

Foster's trial was rescheduled several times, and Foster makes no claim that the later continuances were not properly charged to him. A few days before the beginning of his trial, Foster pled guilty to the charges in both cases. On November 22, 2016, pursuant to plea negotiations, the district court sentenced Foster to 89 months' imprisonment in 12CR1041 and 50 months' imprisonment in 12CR1692, with the sentences to run concurrent with each other and also concurrent with the sentence in the Wyandotte County case. The district court awarded Foster jail credit calculated from April 23, 2012. Foster timely appealed each case and the cases have been consolidated on appeal.

Foster's sole claim on appeal is that the district court lacked jurisdiction to convict him because the State failed to bring him to trial within 180 days of his request under the UMDDA. Foster first argues that he substantially complied with the provisions of the UMDDA in order to trigger the 180-day clock. He then argues that the district court lacked jurisdiction to convict him because the 180-day clock expired on June 10, 2015. He argues in the alternative that the 180-day clock expired on August 24, 2015.

The State argues that the district court had jurisdiction to convict Foster because he failed to substantially comply with the provisions of the UMDDA in order to trigger the 180-day clock. Alternatively, the State argues that even if Foster substantially complied with the UMDDA, the State did not exceed the 180-day time period.

5

Whether a defendant's statutory right to a speedy trial was violated is a question of law subject to de novo review. *State v. Breedlove*, 295 Kan. 481, 486, 286 P.3d 1123 (2012); see also *State v. Angelo*, 287 Kan. 262, 268, 197 P.3d 337 (2008) (unlimited review over question regarding application of detainer statute). To resolve the question presented, this court must interpret and apply the UMDDA. Statutory interpretation and the determination of jurisdiction involve questions of law over which this court's scope of review is unlimited. *State v. Alonzo*, 296 Kan. 1052, 1054, 297 P.3d 300 (2013).

As an initial matter, Foster acknowledges that he pled guilty to the charges in both cases, and, generally, defects for failure to comply with a prescribed statutory time frame are waived by the entry of a guilty plea. See *State v. Freeman*, 236 Kan. 274, 280, 689 P.2d 885 (1984). But under the UMDDA, the time period for bringing a defendant to trial is jurisdictional. K.S.A. 2014 Supp. 22-4303; *State v. Rodriguez*, 254 Kan. 768, Syl. ¶ 3, 869 P.2d 631 (1994). A defendant does not waive a jurisdictional defect by entering a guilty plea. K.S.A. 2014 Supp. 22-3208(3)-(4); *State v. Browning*, 245 Kan. 26, Syl. ¶ 1, 774 P.2d 935 (1989). Thus, Foster's guilty pleas are irrelevant to this court's appellate jurisdiction.

Before proceeding further, we note that the Kansas Legislature amended the UMDDA effective July 1, 2016, although the amendments do not appear to substantially affect the issues in this appeal. Foster's cases were filed in district court before the 2016 amendments. The parties' briefs cite the applicable provisions of the UMDDA before the 2016 amendments, and we will do the same in this opinion.

SUBSTANTIAL COMPLIANCE WITH THE UMDDA

The UMDDA provides the manner in which an inmate in a Kansas penal or correctional institution may require disposition of any criminal charges pending within the state. *State v. Burnett*, 297 Kan. 447, 452-53, 301 P.3d 698 (2013). The aim of the

UMDDA is to prevent indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges, and it seeks to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a reasonable amount of time. 297 Kan. at 453 (explaining history and purpose of UMDDA). Once a prisoner properly initiates disposition of his or her pending charges under the UMDDA, the State's failure to bring those charges to trial within 180 days deprives the district court of jurisdiction, subject to certain statutory exceptions. K.S.A. 2014 Supp. 22-4303.

Substantial compliance with the UMDDA is sufficient to invoke its protections. *Burnett*, 297 Kan. at 453. However, the burden of complying with the requirements of the UMDDA, as well as the requirements of the parallel Agreement on Detainers, K.S.A. 22-4401 et seq., rests solely with the prisoner. *In re Habeas Corpus Application of Sweat*, 235 Kan. 570, 574, 578, 684 P.2d 347 (1984).

We begin by setting forth the relevant portions of the UMDDA. K.S.A. 2014 Supp. 22-4301(a) provides:

"(a) Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing addressed to the court in which the indictment, information, motion to revoke probation or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment."

K.S.A. 22-4302 provides:

"The request shall be delivered to the warden, superintendent or other officials having custody of the prisoner, who shall forthwith:
"(a) Certify the term of commitment under which the inmate is being held, the time already served on the sentence, the time remaining to be served, the good time

7

earned, the time of parole eligibility of the inmate, and any decisions of the prisoner review board relating to the inmate;

"(b) for crimes committed on or after July 1, 1993, certify the length of time served on the prison portion of the sentence, any good time earned and the projected release date for the commencement of the postrelease supervision term; and

"(c) send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the county attorney to whom it is addressed."

K.S.A. 2014 Supp. 22-4303 provides:

"Within 180 days after the receipt of the request and certificate by the court and county attorney or within such additional time as the court for good cause shown in open court may grant, the prisoner or such prisoner's counsel being present, the indictment, information or complaint shall be brought to trial or the motion to revoke probation shall be brought for a hearing; but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for such prisoner to be heard. If, after such a request, the indictment, information or complaint is not brought to trial within that period, or the motion to revoke probation is not brought for a hearing within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information, motion to revoke probation or complaint be of any further force or effect, and the court shall dismiss it with prejudice."

K.S.A. 2014 Supp. 22-4301(a) requires an incarcerated person to affirmatively request final disposition of pending charges in writing and to address that request to the court *and* the county attorney where the charges are pending. *Burnett*, 297 Kan. at 454. The prisoner is not required to send this initial request by registered or certified mail. 297 Kan. at 457. "Where an accused who is confined in the Kansas state penitentiary prepares a written request for a speedy trial but fails to have a copy of the request served on the county attorney as required by the detainers act, his failure to comply with the provisions of the statute prevents its application to his case." *Townsend v. State*, 215 Kan. 485, Syl. ¶ 4, 524 P.2d 758 (1974); see also *Ekis, Petitioner v. Darr*, 217 Kan. 817, 823, 539 P.2d

16 (1975) (inmate fails to invoke 180-day limitation when inmate files request in the proper court but fails to serve the prosecutor); *State v. Counce*, No. 114,644, 2016 WL 4499467, at *2 (Kan. App. 2016) (unpublished opinion) (inmate who failed to send request to county attorney failed to substantially comply with UMDDA).

K.S.A. 22-4302 also requires that the incarcerated person deliver a copy of the request to the official having custody of that person. *Burnett*, 297 Kan. at 454. This requirement is in addition to the prisoner's obligation to mail the request to the court and the county attorney under K.S.A. 2014 Supp. 22-4301(a). The custodial official shall forthwith certify the term of commitment under which the prisoner is being held as well as other information about the sentence. K.S.A. 22-4302(a)-(b). The custodial official is then obligated to mail a copy of the inmate's request and the certification to the proper court and the county attorney by registered or certified mail, return receipt requested. K.S.A. 22-4302(c). The burden to send the *certification* to the district court and the county attorney shifts to prison officials once the facts establish that the prisoner properly invoked the UMDDA. *Pierson v. State*, 210 Kan. 367, 374, 502 P.2d 721 (1972).

Here, the district court found that Foster failed to substantially comply with the provisions of the UMDDA in order to trigger the running of the 180-day clock for two reasons. First, the record was undisputed that Foster mailed his initial request for final disposition of the charges only to the Johnson County District Court but not to the county attorney as required by K.S.A. 2014 Supp. 22-4301(a). Second, the district court found that Foster failed to deliver his request to the proper custodial official for the certification procedure as required by K.S.A. 22-4302. We agree with the district court's findings.

Foster concedes that he failed to mail his initial request for final disposition to the county attorney as required by K.S.A. 2014 Supp. 22-4301(a). But Foster asserts that he substantially complied with this requirement because the district attorney received actual notice of his UMDDA request on the day it was filed by way of a paper copy from the

9

clerk's office. Foster's assertion is speculative. The record shows that the clerk received and filed Foster's request on December 12, 2014, and there is a handwritten notation that a copy of the document was placed in the district attorney's box in the clerk's office. But that notification does not indicate when or if the document was *received* by the district attorney. This fact is important because receipt of the document triggers the running of the 180 days to bring the inmate to trial. See K.S.A. 2014 Supp. 22-4303.

The district court found that it was not the clerk's responsibility to notice the district attorney's office regarding Foster's wishes to have his speedy trial or disposition of detainer heard within the statutory time period. The district court observed that Foster could "just as easily have addressed an envelope to the Johnson County District Attorney's Office," in order to comply with the statutory requirement. It would be one thing if Foster claimed to have mailed the UMDDA request to the prosecutor's office and the prosecutor denied receiving it. But here, Foster acknowledges that he never attempted to send a copy of the request to the county attorney as required by the statute.

At the hearing on the motion to dismiss, the district attorney stated that his office had no record of ever receiving the document from the clerk's office. The district attorney stated that if the document had been mailed and addressed to the district attorney's office, administrative protocols were in place in the office by which the notice would have been delivered to the attorney assigned to the case and the defendant's transfer to Johnson County would have been handled promptly. Instead, the district attorney stated that his office discovered Foster's request in April 2015 when the prosecutor previously assigned to the case discovered a notation about the request in the electronic case file. Because of this delay, the district court did not order Foster transferred to Johnson County until May 8, 2015. Foster cannot establish that the district attorney received actual notice of the request for disposition of the charges before April 2015, and the burden of complying with the requirements of the UMDDA rests on Foster. See *Sweat*, 235 Kan. at 578.

10

Foster also argues that he substantially complied with K.S.A. 2014 Supp. 22-4301(a) because the district attorney's office had constructive notice of his UMDDA request as soon as it was filed of record with the clerk's office on December 12, 2014. As Foster points out, the district attorney's office acknowledged that it ultimately learned about the request when an assistant district attorney happened to be going through the electronic case file. But if an inmate's filing of a UMDDA request with the clerk's office constituted substantial compliance with the requirement to mail the notice to the county attorney, this would render the provisions of K.S.A. 2014 Supp. 22-4301(a) meaningless.

We also agree with the district court's finding that Foster failed to deliver his request to the proper custodial official for the certification procedure as required by K.S.A. 22-4302. Although the record is not entirely clear on how Foster's UMDDA request was mailed, the parties agree that the request was mailed only to the district court and not the county attorney. In addition to an inmate's obligation to mail the request to the court and the county attorney, K.S.A. 22-4302 also requires the incarcerated person to deliver a copy of the request to the official having custody of that person. *Burnett*, 297 Kan. at 454. The custodial official certifies the term of commitment under which the inmate is being held as well as other information about the sentence. K.S.A. 22-4302(a)-(b). The custodial official is then obligated to mail a copy of the inmate's request and the certification to the proper court and the county attorney by registered or certified mail, return receipt requested. K.S.A. 22-4302(c).

None of this happened in Foster's case. Although Foster apparently asked Tayler to mail his UMDDA request to the district court, he did not provide an additional copy to the Wyandotte County sheriff, the secretary of the KDOC, or any other official having custody of Foster in order to comply with the certification requirements of K.S.A. 22-4302. In fact, no certification of Foster's term of commitment was ever prepared in Foster's case as required by the statute. It is only after the court and the county attorney

11

receive the request and certificate from the custodial official that the 180-day period to bring the defendant to trial begins to run. See K.S.A. 2014 Supp. 22-4303.

Foster points out that it is not the prisoner's responsibility to mail the request and certification to the district court and the county attorney; just to deliver it to a custodial official. *Burnett*, 297 Kan. at 457. The burden to send the certification to the district court and the county attorney shifts to prison officials once the facts establish that the prisoner properly invoked the UMDDA. *Pierson*, 210 Kan. at 374. But Foster never delivered a separate copy of his UMDDA request to the custodial official for certification in the first place in order to shift the burden of mailing to the custodial official.

Foster argues that when he gave Tayler his request to mail to the district court, "he delivered it to an appropriate party under the Act." The record reflects that Tayler was a programs assistant at the Wyandotte County jail who provided Foster with a UMDDA form and notarized his signature on the form. The record includes no other information about Tayler's job duties or responsibilities. The record does not establish that Tayler was there to provide legal advice or to ensure that Foster complied with the requirements of the statute, nor did she represent to Foster that she would do so. Even if Tayler qualified as a custodial official, the record does not establish, nor does Foster claim, that he requested Tayler to make or deliver an additional copy of the form to the sheriff's office or to the KDOC for the purpose of certification. The district court ruled that "the Court is not going to find substantial compliance by having someone from the sheriff's office come up to notarize the document when it wasn't actually submitted to the Sheriff of Wyandotte County for satisfaction of the service of disposition of detainer."

We do find that the district court made one erroneous finding on the issue of whether Foster substantially complied with the provisions of K.S.A. 22-4302. The district court found that Foster should have delivered a copy of his request to the KDOC rather than the Wyandotte County jail, and so his "trying to give it to the Wyandotte County

12

Sheriff," was not substantial compliance. We believe that Foster could have complied with the provisions of K.S.A. 22-4302 by delivering an additional copy of his UMDDA request to the proper custodial official at either the Wyandotte County sheriff's office or the KDOC for the purpose of certification. See *Burnett*, 297 Kan. at 455-56. But here, the record reflects that Foster did not deliver an additional copy of his UMDDA request to any custodial official for the purpose of certification as required by K.S.A. 22-4302.

Foster cites *Burnett* to support his claim that he substantially complied with the provisions of the UMDDA in order to trigger the 180-day clock. In that case, Burnett was sentenced to the KDOC for crimes committed in McPherson County. While still in the McPherson County jail, Burnett filed a UMDDA request with the Reno County District Court in order to dispose of charges pending against him in that county. Burnett certified that he sent a copy of his request to the Reno County district attorney, the Reno County District Court clerk, and the Kansas secretary of corrections. 297 Kan. at 449. The State conceded that the 180-day time period to bring Burnett to trial commenced on February 7, 2007. After several continuances of the preliminary hearing, Burnett was bound over for trial scheduled for August 13, 2007. Burnett filed a motion to dismiss on August 9, 2007, 183 days after he filed his UMDDA request with the district court. 297 Kan. at 449.

The State claimed the motion to dismiss should be denied because: (1) Burnett was in the McPherson County jail at the time of his request and was not being held by or serving a sentence with KDOC; (2) Burnett's request was not accompanied by a certificate from KDOC or any other facility certifying the time commitment on his sentence; and (3) Burnett was not under a detainer when he filed his request, and one was not placed until May 7, 2007. 297 Kan. at 449-50. The State did not claim that any of the continuances tolled the 180-day period. 297 Kan. at 450. The district court denied the motion to dismiss after finding the UMDDA did not apply because Burnett had not been serving a sentence with the KDOC when he filed his request. 297 Kan. at 450.

13

The Court of Appeals affirmed the district court's judgment but on different grounds. The Court of Appeals concluded the UMDDA did not apply because there was no evidence establishing (1) when the Reno County district attorney actually received Burnett's request and certification; (2) that Burnett delivered the request to a McPherson County jail official to certify the terms of his incarceration; or (3) that Burnett sent his request by registered or certified mail. 297 Kan. at 450-51.

The Kansas Supreme Court granted a petition for review and reversed the judgment of the Court of Appeals and the district court. 297 Kan. at 448. The Supreme Court first found that Burnett was not required to prove when the Reno County district attorney actually received Burnett's request and certification because once the request was delivered to the KDOC, the burden to send the certification to the district court and the county attorney shifted to prison officials. 297 Kan. at 454-55. The court next found that it was appropriate for Burnett to deliver his UMDDA request to the KDOC even though he was still in the McPherson County jail when he made his request. 297 Kan. at 456. The court also found that Burnett was not required to send his initial UMDDA request to the district court and the county attorney by registered or certified mail under K.S.A. 22-4301(a); instead, only the KDOC needed to mail the request and certification by registered or certified mail under K.S.A. 22-4302. 297 Kan. at 457.

Having found no procedural bar to addressing the merits of Burnett's claim, the court noted that under K.S.A. 22-4303, if all other conditions are met, the passage of the 180-day statutory period must be treated as conclusive of undue delay unless: (1) the court for good cause in open court grants additional time; (2) the parties stipulate to a continuance; or (3) a continuance is granted on notice to the attorney of record and opportunity for the prisoner to be heard. 297 Kan. at 458. Because the State did not claim that any of the continuances granted by the court in Burnett's case tolled the 180-day period, the court concluded that the charges against Burnett must be dismissed. 297 Kan. at 458-59.

14

*Burnett* is distinguishable from Foster's case in many important respects. Burnett certified that he sent a copy of his request to the Reno County district attorney, the Reno County District Court clerk, and the Kansas secretary of corrections. 297 Kan. at 449. Here, it is undisputed that Foster never sent a copy of his initial UMDDA request to the district attorney. Foster also never provided an additional copy of his request to a custodial official for purposes of certification. The procedural deficiencies analyzed by the court in *Burnett* differ from the reasons Foster failed to comply with the UMDDA. *Burnett* does not support Foster's claim that he substantially complied with the provisions of the UMDDA in order to trigger the 180-day clock.

In sum, the record is undisputed that Foster mailed his initial request for final disposition of the charges only to the Johnson County District Court but not to the county attorney as required by K.S.A. 2014 Supp. 22-4301(a). The record also supports the district court's finding that Foster failed to deliver his request to the proper custodial official for the certification procedure as required by K.S.A. 22-4302. In fact, no certification of Foster's term of commitment was ever prepared in Foster's case as required by the statute. The burden is on Foster to establish substantial compliance with the UMDDA. See *Sweat*, 235 Kan. at 574. As a result, we agree with the district court that Foster failed to substantially comply with the provisions of the UMDDA in order to trigger the running of the 180-day clock for speedy trial purposes.

Although we could end our analysis here, we will also address Foster's claim that he was not brought to trial within 180 days of his UMDDA request. The State argues that even if Foster substantially complied with the UMDDA, the State did not exceed the 180-day time limit. If the State is correct, then we should affirm the district court's judgment even if we are wrong about whether Foster substantially complied with the UMDDA.

15

Foster contends that the 180-day clock ran on June 10, 2015, 180 days after his UMDDA request was filed with the district court. He argues in the alternative that the deadline expired on August 24, 2015. The State argues that it did not exceed the 180-day deadline because the delay from May 28, 2015, to August 12, 2015, had been granted by the court for good cause. The State does not address Foster's alternative argument.

As we have noted, the 180-day time period to bring a defendant to trial under the UMDDA only begins to run after the court and the county attorney receive the request and certificate from the custodial official. See K.S.A. 2014 Supp. 22-4303. That never happened in Foster's case, which renders it impossible to determine when the 180-day time limitation expired. But for purposes of Foster's argument, we will assume that the time limitation began to run on December 12, 2014, the date that his UMDDA request was filed with the district court.

Under K.S.A. 2014 Supp. 22-4303, if all other conditions are met, the passage of the 180-day statutory period must be treated as conclusive of undue delay unless: (1) the court for good cause in open court grants additional time; (2) the parties stipulate to a continuance; or (3) a continuance is granted on notice to the attorney of record and opportunity to be heard. *Burnett*, 297 Kan. at 458. The State claims the first exception applies here because the court granted additional time for good cause in open court for the delay in the preliminary hearing from May 28, 2015, to August 12, 2015.

The record supports the State's argument. At the hearing on May 28, 2015, Foster's defense counsel requested the district court to set both cases for a preliminary hearing. Based on the court's busy docket and the amount of time the parties anticipated they would need for a preliminary hearing, the district court indicated that August 12, 2015, was the earliest possible date for that hearing. The district court's docket was unusually

16

congested because the judge assigned to hear Foster's cases had recently taken over the docket from another judge. In any event, Foster does not argue that the district court could have scheduled his preliminary hearing any earlier than August 12, 2015.

The State asked the district court to make a finding of good cause for the delay in scheduling the preliminary hearing because of the court's crowded docket. Foster's counsel argued that a good cause finding was unnecessary because the cases were not being set beyond the 180-day time limit. In any event, the district court noted that August 12 was the earliest date it could set the preliminary hearing and stated, "To the extent that that is a finding that stays the speedy trial disposition of the detainer, then so be it."

Foster argues on appeal, contrary to his argument on May 28, 2015, that the delay from May 28, 2015, to August 12, 2015, caused the cases to be set beyond the 180-day time limit, which he now claims expired on June 10, 2015. But the plain language of K.S.A. 2014 Supp. 22-4303 states that the 180-day time limit can be extended by "such additional time as the court for good cause shown in open court may grant, the prisoner or such prisoner's counsel being present." The May 28, 2015 extension was granted in open court, and Foster and his counsel were present. Under K.S.A. 2014 Supp. 22-4302, it does not matter whether a continuance has been requested by the defendant or the State, as long as the continuance is granted for good cause and in open court with the defendant or counsel present. See *State v. Watson*, 39 Kan. App. 2d 923, 928, 186 P.3d 812 (2008).

Here, at the May 28, 2015 hearing, the district court indicated that August 12, 2015, was the earliest possible date for a preliminary hearing based on the court's busy docket and the amount of time the parties anticipated they would need for the hearing. The district court was aware that the cases were subject to a 180-day deadline, and the court stated, "To the extent that that is a finding that stays the speedy trial disposition of the detainer, then so be it." We conclude that the additional time for the preliminary hearing was granted by the court for good cause in open court with Foster and his counsel

17

present. As a result, the delay from May 28, 2015, to August 12, 2015, does not count against the State's deadline to bring Foster to trial under K.S.A. 2014 Supp. 22-4303.

Foster argues that the May 28, 2015 continuance of the preliminary hearing did not extend the 180-day deadline because it was not a "trial continuance." But there is nothing in the language of K.S.A. 2014 Supp. 22-4303 to convey that only "trial continuances" toll the 180-day time limit. Moreover, in *State v. Waldrup*, 46 Kan. App. 2d 656, 671-76, 263 P.3d 867 (2011), a case construing the Agreement on Detainers, this court held that a delay caused by the continuance of a preliminary hearing tolled the 180-day speedy trial period set forth in the agreement. Our Supreme Court has held that the UMDDA and the Agreement on Detainers are parallel acts, designed for the purpose of speedily bringing an incarcerated defendant to trial. *Sweat*, 235 Kan. at 574.

In denying Foster's motion to dismiss, the district court also found that Foster acquiesced in the May 28, 2015 continuance. On appeal, Foster strenuously argues that he did not acquiesce to the delay. We need not reach this issue based on our finding that the delay in prosecution from May 28, 2015, to August 12, 2015, was granted by the court for good cause in open court with Foster and his counsel present.

This brings us to counting the days. From December 12, 2014, to May 28, 2015, is 167 days. For the reasons we have stated, the delay from May 28, 2015, to August 12, 2015, does not count toward the speedy trial deadline. On August 12, 2015, the district court held a preliminary hearing on both cases and bound Foster over for trial. The district court offered August 24, 2015, as a trial date, but Foster's counsel was unavailable on that date. The district court then set both cases for trial on October 19, 2015. The court assessed the days between August 12 and August 24 against the State, and the days from August 24 to October 19 against Foster. Foster did not object to this assessment in district court, and he makes no argument on appeal that this assessment was improper. So adding the 12 days from August 12, 2015, to August 24, 2015, when a trial was made available

to Foster, brings the total number to 179 days. Although the trial was rescheduled several times after the district court denied the motion to dismiss, Foster makes no claim that the later continuances were not properly charged to him. Based on these calculations, we conclude that even if the speedy trial clock started on December 12, 2014, as Foster asserts, the State did not fail to bring Foster to trial within 180 days.

Alternatively, Foster argues that even if the delay from May 28, 2015, until August 12, 2015, tolled the speedy trial clock, the 180-day clock expired on August 24, 2015. In counting the days, Foster asserts that the time between *and including* December 12, 2014, and May 28, 2015, was 168 days. He asserts that the 12 days between August 12, 2015, and August 24, 2015, brought the total to 180 days. Foster argues that the 180-day clock expired on August 24, 2015, and the district court lost jurisdiction because the State needed to bring him to trial at least one day before that date.

We reject Foster's alternative argument for two reasons. First, in counting the days between December 12, 2014, and May 28, 2015, Foster includes December 12, 2014, as the first day. But in computing the time period between these dates, we exclude the day of the event that triggers the period. See K.S.A. 2017 Supp. 60-206(a)(1)(A). We apply this statute in a criminal proceeding even though it is part of the Kansas Rules of Civil Procedure. See *State v. White*, 234 Kan. 340, 345, 673 P.2d 1106 (1983). In other words, we do not count December 12, 2014, as the first day. Thus, the period of time from December 12, 2014, to May 28, 2015, is 167 days, not 168 days as asserted by Foster.

Second, even if Foster is correct that the State needed to bring him to trial at least one day *before* August 24, 2015, which was a Monday, the district court still met the deadline by offering a trial date on August 24, 2015, because when a deadline falls on a Sunday, the period continues to run until Monday. See K.S.A. 2017 Supp. 60-206(a)(1)(C); *White*, 234 Kan. at 345. Thus, Foster's alternative argument about the deadline expiring on August 24, 2015, is without merit.

19

Affirmed.

* * *

STANDRIDGE, J., concurring:  Based on the record before us, I would find Semaj Leonard Foster substantially complied with the provisions of the Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 et seq., in order to trigger the 180-day clock. Nevertheless, I agree with the majority's conclusion that the district court's decision must be affirmed because the State did not exceed the 180-day time period.